HOUSTON D. MEARES. D/B/A DIXIE FIRE & SPRINKLER COMPANY v.
NIXON CONSTRUCTION COMPANY

No. 7026SC27

(Filed 6 May 1970)

**1. Contracts §§ 21, 28—— action for breach of contract —— instructions**

In an action by a subcontractor against a general contractor to recover
damages for breach of contract, the contract *is held* to have contemplated
that the contractor, and not the subcontractor, had the responsibility of
relaying the subcontractor's monthly estimates of work completed to the
owner for its approval before the subcontractor was to be paid; and where
the subcontractor's evidence was to the effect that he timely submitted the
monthly estimates to the contractor and that the estimates were not paid
within thirty days as provided by the contract, the trial court properly in-
structed the jury that it would be their duty to find that the contractor
breached the contract if they found that he failed to pay the estimates
within thirty days, the jury not being required also to find that the owner
had approved the estimates.

**2. Contracts § 12—— construction —— intention of the parties**

The heart of a contract is the intention of the parties, which is to be
ascertained from the language used, the subject matter, the end in view,
the purpose sought, and the situation of the parties at the time.

**3. Contracts § 12—— construction**

A contract is to be construed as a whole.

**4. Contracts §§ 26, 29—— breach of contract —— damages —— lost profits
—— evidence of anticipated profits**

In an action by a subcontractor against a general contractor for breach
of contract, the measure of lost profits was the difference between the con-
tract price and the subcontractor's cost to complete the work under the
contract; and the admission of the subcontractor's testimony that his an-
ticipated profit was 20% of the contract price was erroneous, since the
testimony did not provide an adequate factual basis for the jury to ascer-
tain the measure of damages.

**5. Contracts § 29—— breach of contract —— measure of damages**

In a suit for damages arising out of a breach of contract, the party in-
jured by the breach is entitled to be fully compensated for the loss and
to be placed as near as may be in the position which he would have oc-
cupied had the contract not been breached.

**6. Contracts § 29—— breach of contract —— profits and losses —— deter-
mination**

In an action for damages for breach of a construction contract, the
profits and losses must be determined according to the circumstances of
the case and the subject matter of the contract.

**7. Contracts § 27—— breach of contract —— evidence**

A party seeking to recover for "gains prevented" or "lost profits" must
present evidence rather than speculation.

APPEAL by defendant from *Ervin, J.,* 19 May 1969 Schedule "C" Session, MECKLENBURG Superior Court.

This is a civil action arising in contract brought by plaintiff against Nixon Construction Company and D. H. Overmyer Company, Inc. (Overmyer). Before trial plaintiff caused judgment of voluntary nonsuit to be entered as to Overmyer, therefore, Nixon Construction Company will be referred to hereinafter as defendant.

The pleadings and evidence reveal that plaintiff was in the business of installing fire sprinkler systems and defendant was a general contractor constructing warehouses for Overmyer in Charlotte, North Carolina, Birmingham, Alabama, and Cleveland, Ohio. The complaint, filed on 11 January 1968, and amendments to the complaint set forth four causes of action summarized as follows:

(1) On or about 25 October 1965 and on or about 8 April 1966, plaintiff and defendant entered into a contract whereby plaintiff agreed to install an automatic sprinkler system in a warehouse being built by defendant for Overmyer in Charlotte, N. C., the total contract price being $38,803.00. Plaintiff properly performed all of its obligations under said contract and there remains due and owing plaintiff the sum of $15,935.76 after giving credit for all payments. Although plaintiff has made demand on defendant for payment, defendant has failed to pay the balance due.

(2) On or about 8 April 1966, plaintiff and defendant entered into a contract whereby plaintiff agreed to install an automatic sprinkler system in a building being constructed by defendant for Overmyer in Birmingham, Alabama, the total contract price being $32,395.00. Plaintiff began work on said sprinkler system and performed all of the work which could be done as of 30 April 1966 and on that date submitted an invoice for such work in amount of $8,-460.00 to defendant. Defendant failed to pay the invoice within thirty days as required by the contract, which failure to pay amounted to a material breach of the contract by defendant. Although plaintiff attempted to complete the contract, in July he was notified by defendant's parent corporation that his contract was terminated. Plaintiff is entitled to recover $10,444.51 from defendant for breach of the Birmingham contract.

(3) On or about 14 April 1966, plaintiff and defendant entered into three contracts whereby plaintiff agreed to install automatic sprinkler systems in warehouses being built by defendant for Overmyer in Cleveland, Ohio, the total contract price being $101,000.01 plus an additional $6,500.00 for substitution of iron pipe. Pursuant to the terms of the contracts, plaintiff began work on said sprinkler

systems, submitting invoices totaling $36,846.00 to defendant for work done to date on 26 May 1966. Defendant paid plaintiff on one of the invoices submitted but failed and refused to pay the other invoices within thirty days after their submission as required by the contracts, which failure to pay amounted to a material breach of the contracts on the part of defendant. Although plaintiff attempted to complete work on the Cleveland contracts, he was notified by defendant on or about 19 July 1966 that his contracts were terminated. Defendant is indebted to plaintiff in the sum of $29,948.49 under said Cleveland contracts and refuses to pay the same although payment has been demanded by plaintiff.

(4)   During the latter part of 1965 and early in 1966, defendant requested plaintiff to prepare and furnish to defendant drawings for automatic sprinkler systems which could be utilized by defendant in various warehouses which it proposed to construct. Plaintiff prepared and furnished defendant with said drawings, the reasonable value of the drawings being $2,500.00, but defendant has failed. to pay for said drawings although payment has been demanded.

In its original answer, defendant set forth a general denial of the allegations of the complaint, denying that it was indebted to plaintiff in any amount. Immediately before the trial, defendant filed an amendment to its answer and a counterclaim alleging that plaintiff breached the Birmingham and Cleveland contracts, making it necessary for defendant to employ other firms to complete the contracts at sums substantially higher than those contracted by plaintiff; defendant prayed judgment against plaintiff for breach of the Birmingham contract in amount of $4,806.75 and on the Cleveland contracts in amount of $111,110.79.

During the trial the parties entered into a stipulation regarding the Charlotte contract and agreed that the first issue would be answered in favor of plaintiff in amount of $13,738.76.

Plaintiff introduced evidence in support of the allegations of his complaint. His evidence tended to show that although the contracts provided that defendant would make monthly payments on estimate invoices submitted by plaintiff, defendant refused to make said payments; that plaintiff attempted to continue to perform his contracts in Birmingham and Cleveland but was prevented from doing so by defendant or defendant's parent corporation.

By cross-examination of plaintiff and by its own witnesses, defendant's evidence tended to show: Plaintiff completed most of the underground work on the Birmingham contract. By late June of 1966 construction of the building had progressed to the stage that de-

fendant was ready for plaintiff to install the interior portion of the sprinkler system. On 28 June 1966, an official of defendant's parent corporation sent plaintiff a telegram demanding that plaintiff put a crew of at least ten men on the Birmingham job. On 1 July 1966, the same official sent plaintiff another telegram stating, "Since you have not complied with the terms of your contract nor answered my telegram dated June 28, 1966 we are hereby cancelling your contract effective this date." Defendant employed another firm to complete the job at a cost greater than the price contained in the contract between the parties. As to the Cleveland contracts, within a few hours after plaintiff's employees began work they were stopped because of failure to obtain clearance from the labor union. While attempting to work out arrangements with the union, plaintiff subcontracted preliminary work to Cleveland contractors. Plaintiff failed to reach an agreement with the union and continued his efforts to subcontract the work. On 14 July 1966, an official of defendant's parent corporation sent plaintiff a telegram stating, "We require you to start work on the Cleveland job Monday morning July 18, 1966 or we will be forced to invoke paragraph 11 of our contract with you." (Paragraph 11 provides as follows: "The General Contractor shall give the Subcontractor reasonable time to settle any labor disputes, but if the Subcontractor has a work stoppage for a period of over 3 days, for any reason, the General Contractor shall have the right to have said work performed by others at the expense of the Subcontractor.") On 19 July 1966, the same official sent plaintiff a telegram terminating the contracts "because of your failure to fulfill the obligations of your contract." Defendant then arranged for the sprinkler system to be completed by others at a cost considerably higher than the price contracted with plaintiff.

Other pertinent evidence is set forth in the opinion.

Issues were submitted to and answered by the jury as follows:

"1.   In what amount is the defendant indebted to the plaintiff on the Charlotte contract?

ANSWER:   $13,738.76

2.   Did the defendant breach the Birmingham contract, as alleged in the complaint?

ANSWER:   Yes

3.   If so, what amount, if any, is the plaintiff entitled to recover from the defendant on the Birmingham contract?

ANSWER:   $10,444.51

4. Did the plaintiff breach the Birmingham contract, as alleged in the Answer and Counterclaim?

ANSWER: ............ ..........................

5. If so, what amount, if any, is the defendant entitled to recover from the plaintiff on the Birmingham contract?

ANSWER: ..................................

6. Did the defendant breach the Cleveland contracts, as alleged in the complaint?

ANSWER: Yes

7. If so, what amount, if any, is the plaintiff entitled to recover from the defendant on the Cleveland contracts?

ANSWER: $11,139.13

8. Did the plaintiff breach the Cleveland contracts, as alleged in the Answer and Counterclaim?

ANSWER: ...... .......... ....................

9. If so, what amount, if any, is the defendant entitled to recover from the plaintiff on the Cleveland contracts?

ANSWER: ..................................

10. Did the plaintiff and the defendant have a contract for the plaintiff to furnish and deliver drawings for automatic sprinkler systems to the defendant in addition to the drawings required by the contracts in controversy, as alleged in the complaint?

ANSWER: No

11. If so, what is the reasonable value of such drawings?

ANSWER: ...... ............................"

From judgment in favor of plaintiff predicated on the verdict, defendant appealed.

*Fairley, Hamrick, Monteith & Cobb by Laurence A. Cobb for plaintiff appellee.*

*Ernest S. DeLaney, Jr., for defendant appellant.*

BRITT, J.

[1]   In its brief defendant states its contention regarding the first assignment of error as follows: "The Court below committed error when it instructed the jury it should find that the defendant breached the contracts by failing to pay the estimates within thirty days without the jury first finding that said estimates had been approved."

A portion of the charge included in this assignment of error is as follows:

"By way of summary, ladies and gentlemen, with regard to the second issue, 'did the defendant breach the Birmingham contract, as alleged in the complaint?' the court instructs you that if you find from the evidence and by its greater weight, the burden being upon the plaintiff on this issue to so satisfy you, that the defendant, Nixon, failed to pay the invoices submitted to them in accordance with the paragraphs of the contract that I have previously read to you, and that the defendant's delays or refusals to make these payments were not reasonable delays, and that there was no bona fide dispute in existence as to the amounts due at that time or as to the percentage of the work completed, and if you further find from the evidence and by its greater weight that the plaintiff had not at that time previously breached the contract, then and in that event the court instructs you it would be your duty to answer the first issue 'yes.' On the other hand, if you fail to so find, or if after considering all of the evidence, you are unable to say where the truth lies or if you find the evidence evenly balanced, then and in any of these events it would be your duty to answer the second issue 'no.' If, however, the work had not progressed to the point required to permit the submission of the invoices and to require payment thereof, or if you find that under the circumstances the delays in payment, if any, were reasonable, that is, that the defendant had reason to believe that the work had not progressed and was not progressing according to the contract and that the plaintiff was not under the terms of the contract entitled to submit or to have the submitted invoices paid, at the time of their submission in accordance with the provisions of the contract, then it would be your duty to answer the second issue 'no.'"

Later in the charge the trial judge gave a similar instruction regarding the Cleveland contracts. Previous to the instruction above set forth the court quoted paragraphs (A), (B) and (C) of section 6 of the contracts but did not quote the proviso of section 6 preceding paragraph (A). Sections 3, 5 and 6 of the contracts provided as follows:

"3.  The General Contractor agrees to pay to the Subcontractor for the performance of the above described work the sum of [amount specified in each contract] in current funds, subject to additions and deductions for changes as may be agreed upon, and to make payments on account thereof in accordance with Section 6 hereof.

\* \* \*

5. The Subcontractor shall present to the General Contractor a monthly estimate of work completed for the full month; said estimate to be submitted not later than Saturday of the month of the completion of said work.

\* \* \*

6. Provided this agreement has been approved by the Owner, the Owner shall upon approval of said estimate, make payments on account to Subcontractor on behalf of the General Contractor as follows:

(A) The estimates shall show percentages of work completed and, where applicable, amounts requested for payment. Unless otherwise agreed, such requests for payment shall be made only once monthly and submitted for the full month not later than the 5th day of the following month. Such requested amounts, less the retained percentages as specified below, shall be paid within 30 days after the date submitted in New York office.

(B) Prior to receipt of each payment, the Subcontractor shall, upon request of General Contractor or Owner, furnish lien waivers for all work, labor and material performed and furnished through date for which each payment becomes due.

(C) The General Contractor and the Owner shall retain 10% of the amount due on each payment until final payment becomes due."

[2, 3] The gist of defendant's argument is that before plaintiff could justify a termination of his work on the Birmingham and Cleveland contracts for failure of defendant to pay monthly estimates when due, plaintiff had the burden of showing that the owner (Overmyer) approved the estimates. We do not accept this argument. In 2 Strong, N.C. Index 2d, Contracts, § 12, p. 315, is found a concise resume of certain well-settled principles of law with respect to construction of contracts; these include the following: "The heart of a contract is the intention of the parties, which is to be ascertained from the language used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time. \* \* \* A contract is to be construed as a whole \* \* \*."

[1] Needless to say, the contract does not clearly state who had the responsibility of relaying the monthly estimates from defendant to the owner and seeking their approval, but considering "the sub-

ject matter, the end in view, the purpose sought, and the situation of the parties," we think the contract contemplated that defendant had this responsibility. The invoices of monthly estimates submitted by plaintiff complied with defendant's requirements as to form; they also complied with "Instructions To Sub-Contractors" provided by defendant's parent corporation (plaintiff's exhibit 14). Evidently, defendant did not expect plaintiff to exercise such responsibility regarding invoice No. 103 for the Cleveland job as the evidence discloses that this invoice, dated 26 May 1966, was paid on 13 July 1966. Plaintiff's evidence discloses that in connection with the Birmingham job he timely submitted to defendant estimate invoices dated 30 April 1966 for $7,614.00 and 30 May 1966 for $6,963.75 and that neither was paid. Plaintiff testified: "I was in contact with the Accounts Payable Department in New York with reference to payment of these invoices. They never gave me a reason why these invoices were not paid." Plaintiff's evidence further discloses that he submitted two estimate invoices to defendant on the Cleveland job and they were not paid.

We think the instructions complained of were fully justified by the pleadings and the evidence; the assignment of error is overruled.
[4]    Defendant assigns as error the admission of certain testimony by plaintiff on the question of the amount of damages sustained by plaintiff, and instructions to the jury pertaining thereto.

On direct examination and over defendant's objection, plaintiff testified substantially as follows: His actual net cost on the Birmingham job was $7,668.62 and lost profits amounted to $6,479.00, a total of $14,147.62. The profit figure of $6,479.00 was arrived at "just like we estimate every job, 20%. This includes overhead and profits." Nixon paid American Cast Iron Company $3,703.11 after that firm filed a lien; after giving credit for that payment, plaintiff's "net cost" was $10,444.51 which included a "lost profit" item of $6,479.00. With respect to the Cleveland jobs, over defendant's objection plaintiff testified substantially as follows: At the time he prepared his bid, he calculated an overhead and profit figure of $21,500.00. This was based on 20% of the total. The total amount of plaintiff's cost and loss of profits in connection with the Cleveland jobs was $29,948.49.

Plaintiff presented no evidence as to what it would have cost him to complete the Birmingham and Cleveland jobs. Regarding the Cleveland underground system job, plaintiff testified:

"For getting about 400 feet of pipe in the ground my company had incurred expenses in excess of what is shown on the contract form. This is the contract that I had signed and if I had been

able to complete the contract I would have incurred costs substantially greater than the amount that appears on the contract."

The amount specified in the Birmingham contract was $32,395.00. Defendant presented evidence tending to show that it paid Charlotte Automatic Sprinkler Company $27,925.00 to complete the Birmingham job and that other payments made thereon brought defendant's total cost to $34,445.36. Defendant's evidence tended to show that the Cleveland underground job cost defendant $83,695.95 as opposed to plaintiff's contract for $40,166.67; that the Cleveland interior jobs cost defendant $54,466.00 for each building as opposed to plaintiff's contract for $33,667.00 for each building.

In his charge to the jury, the trial judge recapitulated plaintiff's evidence regarding loss of profits and later in the charge on the question of damages said:

"Now, applying this rule as the court has attempted to give it to you in this case, the court instructs you that if you answer the third issue and if you consider the third issue, then you should consider as damages the following things: the unpaid balance of the contract price, if any, to which the plaintiff would be entitled; second, lost profits and, as I have previously indicated to you, you would determine that item if you determine it in any amount, by taking the contract price and by subtracting from that contract price what it would have cost the plaintiff in this instance to complete the contract, because the evidence, of course, would indicate that he did not complete this particular contract and that would be an item that would have to be deducted before you could make any determination of lost profits, if you make such a determination."

With respect to the issue on amount of damages on the Cleveland contracts, the court instructed:

"The measure of damages on this issue would be the same as the measure of damages on the third issue I gave you with regard to the Birmingham contracts. I will not repeat those instructions."

The assignment of error is well taken. Defendant's objections to plaintiff's testimony as to how plaintiff estimated his loss of profits should have been sustained. With proper evidence to support them, the court's instructions would have been correct, but this was not the case.

**[5-7]** In a suit for damages arising out of a breach of contract, the party injured by the breach is entitled to full compensation for

MEARES v. CONSTRUCTION CO.

the loss and to be placed as near as may be in the position which he would have occupied had the contract not been breached. *Construction Co. v. Crain and Denbo, Inc.,* 256 N.C. 110, 123 S.E. 2d 590 (1962). In an action for damages for breach of a construction contract, the profits and losses must be determined according to circumstances of the case and the subject matter of the contract. *Construction Co. v. Crain and Denbo, Inc., supra.* A party seeking to recover for "gains prevented" or "lost profits" must present evidence rather than speculation.

In *Tillis v. Cotton Mills,* 251 N.C. 359, 111 S.E. 2d 606 (1959), the court said "damages must be certain, and this certainty which is required does not refer solely to their amount, but also to the question whether they will result at all from the breach." As the court said in *Service Co. v. Sales Co.,* 259 N.C. 400, 131 S.E. 2d 9 (1963), "For a breach of contract the injured party is entitled as compensation therefor to be placed, insofar as this can be done by money, in the same position he would have occupied if the contract had been performed." The measure of lost profits in the instant case is thus the difference between the contract price and what it would have cost plaintiff to complete the work under the contract. It was also said in *Tillis v. Cotton Mills, supra,* "It it incumbent upon the plaintiff to present facts, as to all foreseeable factors involved, that the jury may have a basis for determining damages." The testimony of plaintiff that his *anticipated* profit was 20% of the contract price does not provide an adequate factual basis for the jury to ascertain the measure of damages under the standard of certainty established by the decisions of our Supreme Court.

Although the assignment of error relating to the determination of damages is sustained, we do not think a new trial of all issues is warranted. We think that defendant had a fair trial on all issues except issues No. 3 and No. 7. For that reason the judgment of the superior court is vacated and this cause is remanded for further hearing on the question of damages, if any, due plaintiff on the Birmingham and Cleveland contracts.

Error and remanded.

BROCK and GRAHAM, JJ., concur.