IRON STEAMER, LTD., Plaintiff v. TRINITY RESTAURANT, INC. and JOEL D. CANTOR, Defendants

No. 923SC800

(Filed 6 July 1993)

1. **Landlord and Tenant § 57 (NCI4th)— lease of restaurant— maintenance—breach by landlord**

The trial court did not err in an action for breach of a commercial lease by finding that plaintiff, the landlord, had breached the lease by failing to replace a water heater, failing to replace or otherwise repair an exterior door, and failing

IRON STEAMER, LTD. v. TRINITY RESTAURANT

[110 N.C. App. 843 (1993)]

to replace an inadequate heating and air conditioning system. There was evidence to support the findings of the court, sitting without a jury, in that the lease provided that facilities disrepair that solely caused a loss of the required sanitation rating would be the landlord's responsibility and the hot water heaters ran out of hot water too quickly in violation of health department requirements; the lease required the landlord to maintain all the exterior including a leakproof roof and walls and an exterior door facing the ocean routinely blew open, allowing air into the restaurant; and the lease required the landlord to put the air conditioners in proper working order while there was evidence that the air conditioning unit was not working properly and that plaintiff had never replaced the system.

**Am Jur 2d, Landlord and Tenant §§ 613 et seq., 828 et seq.**

**Rights and remedies of tenant upon landlord's breach of covenant to repair. 28 ALR2d 446.**

2. **Damages § 125 (NCI4th)— breach of commercial lease by landlord—maintenance—lost profits**

The trial court erred in an action for breach of a commercial lease when, sitting without a jury, it made findings and an award for defendant restaurant based on lost profits. Defendants failed to meet their burden of proof in that they presented insufficient evidence at trial to ascertain or measure lost profits with "reasonable certainty." Defendant Cantor's estimation of lost profits is based on assumptions that are purely speculative; moreover, the relationship between lost profits and the income needed to generate such profits in an unestablished resort restaurant context is peculiarly sensitive to variables including quality of food and service and the seasonal nature of the business. Proof of lost profits with reasonable certainty under these circumstances requires more specific evidence and thus a higher burden of proof.

**Am Jur 2d, Damages §§ 912, 913.**

Appeals by plaintiff and defendants from judgment entered 3 April 1992 in Carteret County Superior Court by Judge W. Russell Duke, Jr. Heard in the Court of Appeals 15 June 1993.

Plaintiff, Iron Steamer, Ltd., instituted this action for breach of a written lease agreement against defendants Trinity Restaurant,

Inc. and Joel D. Cantor, seeking monetary damages for nonpayment of rent allegedly due under the lease. Defendants counterclaimed for breach of the lease agreement, alleging certain conditions at the demised premises which caused defendants loss of profits and other monetary damages. The pertinent facts leading up to this dispute are as follows:

In 1989, plaintiff was the owner of the Iron Steamer Resort, a complex consisting of a fishing pier with tackle shop, a motel, a gift shop, and a restaurant facility. In March of 1989, defendant lessee, Trinity Restaurant, Inc., entered into a lease with plaintiff for the restaurant facility, with a term beginning March 1989 and ending November 1989. Defendant lessee delivered the sum of $2,000.00 to plaintiff as rent and utility deposits. Defendant Joel Cantor guaranteed that lease.

Defendant lessee entered into possession of the leased premises in early April 1989 and operated the restaurant without incident until July of 1989, when defendant lessee began making late rent payments. Thereafter, defendant also stopped paying the garbage collection and water bills and left a portion of the electric bill unpaid in the fall.

During the spring and early summer of 1989, defendant lessee began having certain problems with existing parts of the restaurant facility. A water heater that was insufficient for operation of the restaurant was replaced by defendant lessee after plaintiff refused to replace it. A door in the restaurant was adversely affecting the heating and cooling system for the facility. When plaintiff refused to replace the door, defendant lessee purchased and installed a storm door. Defendant lessee also advised plaintiff that the air conditioning and heating system was not adequate for the restaurant facility but the system was never replaced. Defendant lessee vacated the leased premises prior to the termination date of the lease and left the restaurant facility dirty and with broken plumbing.

Defendant lessee claims that plaintiff was obligated under the lease to make certain repairs of existing restaurant fixtures and that plaintiff's failure to do so was a breach of the lease agreement, costing defendant lessee lost profits and replacement expenditures. Plaintiff contends that it was defendant lessee that breached the lease agreement and prayed for damages consisting of unpaid water bills, garbage collection charges, electrical charges, clean up charges, and plumbing repair charges.

IRON STEAMER, LTD. v. TRINITY RESTAURANT

[110 N.C. App. 843 (1993)]

After the trial, the court entered a judgment to the effect that all parties had breached the lease. The trial court found defendants liable to plaintiff for a net total of $2,409.12, which represented the unpaid water bills, garbage collection charges, electrical charges, clean up charges and plumbing repair charges, crediting the deposit defendants paid at the initiation of the lease. The trial court also found defendants entitled to recover from plaintiff the sum of $8,809.20, which included lost profits and replacement expenditures. Therefore, the net award in the judgment in favor of defendants was $6,400.08. From this judgment, plaintiff and defendants appeal.

*Bennett, McConkey, Thompson and Marquardt, P.A., by Samuel A. McConkey, Jr., for plaintiff-appellant-appellee.*

*Darden, Coyne, Simpson & Harris, P.A., by H. Buckmaster Coyne, Jr., for defendants-appellees-appellants.*

WELLS, Judge.

[1] Plaintiff sets forth three arguments in support of six assignments of error for our review. First, plaintiff contends the trial court erred in finding that plaintiff breached the lease agreement, where plaintiff failed to render the premises tenantable for the intended purpose (1) by failing to replace the water heater, (2) by failing to replace or otherwise repair the exterior door, and (3) by failing to replace the inadequate heating and air conditioning system.

In general, where a court sits without a jury, its findings of fact are "conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary." *Williams v. Insurance Co.*, 288 N.C. 338, 218 S.E.2d 368 (1975). In the instant case, there is ample evidence to support the court's findings as to each of the three items of breach.

Defendants presented evidence that the hot water heaters ran out of hot water too quickly in violation of health department requirements and that defendant lessee asked plaintiff to install a new heater. After plaintiff refused defendant lessee's request, defendant lessee paid $1,200.00 to purchase and install a new water heater. The pertinent portion of the lease provides, "facilities disrepair that solely causes a loss of the required [sanitation] rating shall be LANDLORD'S responsibility." (paragraph 8.a. of the Lease Agreement). The lease also limits defendant lessee's responsibility to minor repairs and maintenance of equipment and fixtures. In

## IRON STEAMER, LTD. v. TRINITY RESTAURANT

[110 N.C. App. 843 (1993)]

light of these provisions and the evidence presented, the trial court's finding that such inaction by the plaintiff constituted a breach of the lease agreement was proper.

Defendants also introduced evidence that an exterior door, facing the ocean, routinely blew open allowing air into the restaurant. Upon plaintiff's refusal to replace the door, defendant lessee purchased a new storm door. Both parties agree that the portion of the lease governing the storm door is paragraph 8.d. which requires a landlord to ". . . maintain all the exterior of the subject premises specifically including a leakproof roof and walls. . . ." The trial court reasonably interpreted this provision as requiring action by plaintiff to replace the exterior door and therefore its findings are binding upon us.

Defendants also presented evidence that the heating and air conditioning unit was not functioning properly. There is no question that plaintiff never replaced the heating and air conditioning system in the restaurant facility. The lease contains a specific provision regarding air conditioners to the following effect: "LANDLORD agrees to put all air conditioners in proper working order, and TENANT agrees to maintain and make minor repairs thereafter, excepting motors and compressors which may need replacement without cause of TENANT." (paragraph 8.e. of the Lease Agreement). Clearly, there is sufficient evidence to find that failure to repair or replace the heating and air conditioning unit by the plaintiff lessor was a breach of the lease. This assignment of error is overruled.

[2] Plaintiff next challenges the trial court's findings of fact with respect to lost profits and the award of damages based on those findings. We agree.

In order to recover damages for lost profits, the complainant must prove that except for the breach of contract, profits would have been realized, and he must ascertain such losses with "reasonable certainty." *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 356 S.E.2d 578, *petition denied*, 320 N.C. 639, 360 S.E.2d 92 (1987). North Carolina courts have long held that damages for lost profits will not be awarded based upon hypothetical or speculative forecasts of losses. Our courts, however, have not gone so far as to apply the "New Business Rule" which categorically precludes an award of damages for lost profits where the party seeking damages is a new business with no record of profitability. *See Olivetti, supra.* Instead, we have chosen to evaluate the quality

of evidence of lost profits on an individual case-by-case basis in light of certain criteria to determine whether damages have been proven with "reasonable certainty."

Plaintiff argues that defendants have failed to prove with the requisite degree of certainty, the amount of lost profits defendants should recover due to the alleged breach of contract by plaintiff. The burden of proving damages is always on the party claiming injury. *See Olivetti, supra.* Defendants have failed to meet this burden of proof in that they have presented insufficient evidence at trial to ascertain or measure lost profits with "reasonable certainty."

Defendant lessee began operating the restaurant as a new business in April 1989, continuing through November 1989. It is uncontroverted that defendant lessee's gross revenues for August, September, October and November were lower than the revenues received in May, June or July. The trial court found that, but for plaintiff's breach of contract, "the gross sales figures for a restaurant of that type and location, for the month of August, should have been similar to the gross sales figures for the month of July." The court further found since September, October and November are good fishing months, the resort restaurant's revenues "should have been similar to, or better than, the gross sales figures for the months of May or June."

The court's designated findings of fact, reflect the method by which the court calculated damages or lost profits. While the amount of damages is ordinarily a question of fact, the proper standard with which to measure those damages is a question of law. *Weyerhaeuser Co. v. Supply Co.*, 292 N.C. 557, 234 S.E.2d 605 (1977). Therefore, such questions are fully reviewable by this court. *Olivetti, supra.*

The trial court's determination that gross revenues for August through November would be at least as much, if not more, than the gross revenues for May, June, or July is based on the following evidence: Defendant Joel Cantor testified that "if August had held up the same as July, we would have had eleven thousand dollars more in gross [income]." From this figure, Mr. Cantor estimated the lost profits for that month would "most likely have been around eighty-five or eighty-six hundred dollars." Mr. Cantor arrived at the figure for gross profits essentially by assuming that August would have produced a higher gross income, and by subtracting

### IRON STEAMER, LTD. v. TRINITY RESTAURANT
[110 N.C. App. 843 (1993)]

what he thought would be the approximate additional food, drink, labor and overhead costs needed to accommodate the increase in business. Mr. Cantor then made similar projections for the months of September, October and November. Mr. Cantor's bases for estimating the lost profits at this restaurant in Pine Knoll Shores was his brief experience, less than one year, at a restaurant in another city, and his experience as a cook for the Ramada Inn in Pine Knoll Shores, which lasted about one year.

Upon reviewing the entire record, we find no factual basis upon which a jury could calculate lost profits with a "reasonable certainty." Mr. Cantor's estimation of lost profits is based on assumptions that are purely speculative in nature. Our Court in *Meares v. Construction Co.*, 7 N.C. App. 614, 173 S.E.2d 593 (1970), held that an estimate of anticipated profits does not provide an adequate factual basis for a jury to ascertain the measure of damages. *See also Catoe v. Helms Construction & Concrete Co.*, 91 N.C. App. 492, 372 S.E.2d 331 (1988).

We also note that in an unestablished resort restaurant context, the relationship between lost profits and the income needed to generate such lost profits is peculiarly sensitive to certain variables including the quality of food, quality of service, and the seasonal nature of the business. Therefore, proof of lost profits with reasonable certainty under these circumstances requires more specific evidence and thus a higher burden of proof. While difficult to determine, "damages may be established with *reasonable certainty* with the aid of expert testimony, economic and financial data, market surveys and analysis, and business records of similar enterprises." (Emphasis added). 22 Am.Jur.2d §627 (1988) (*citing* Restatement, Contracts 2d §352, comment b). The record of. evidence simply does not support the trial court's findings of lost profits.

For the reasons stated herein, we reverse the portion of the trial court's order awarding lost profits to defendants.

Because our decision in this case resolves all dispositive issues, we do not reach the merits of plaintiff's additional assignments of error or defendants' appeal.

Affirmed in part, reversed in part.

Judges ORR and McCRODDEN concur.