CASTLE McCULLOCH, INC., PLAINTIFF v. DONALD LEE FREEDMAN, D/B/A FREEDMAN ASSOCIATES, AND FREEDMAN ASSOCIATES, INC., DEFENDANTS

No. COA04-514

(Filed 5 April 2005)

**1. Unfair Trade Practices— competitor's survey—damages not shown**

The trial court did not err by granting defendant's motion for a directed verdict in an action for unfair and deceptive trade practices arising from a bridal show survey and tip sheet by a competitor where plaintiff failed to present evidence that it suffered actual injury as a proximate result of defendant's conduct. There was no evidence from which a jury could calculate lost profits from vendors or payroll damages with a reasonable certainty.

**2. Evidence— door not opened on cross-examination—witness interjecting answer**

The trial court did not err by refusing to allow plaintiff's expert to testify in an unfair and deceptive trade practices action arising from a bridal show survey and tip sheet where the court ruled that plaintiff had not properly disclosed the expert's opinion in discovery. Although plaintiff argued that defendant opened the door on cross-examination, the witness interjected the information and defendant was not the first to raise the issue.

**3. Unfair Trade Practices— costs and attorney fees—frivolous action—discretionary finding**

The trial court did not abuse its discretion by awarding costs and attorney fees to defendant in an unfair and deceptive trade practices action arising from a bridal show survey and tip sheet where it found the action to be frivolous. The court's decision was not manifestly unsupported by reason; moreover, where the court has taxed costs in its discretion, that decision is not reviewable.

Judge TYSON concurring in part and dissenting in part.

Appeal by Plaintiff from judgment entered 17 March 2003 by Judge William Z. Wood, Jr. in Superior Court, Guilford County. Heard in the Court of Appeals 25 January 2005.

*Douglas S. Harris for plaintiff-appellant.*

*Elliot Pishko Gelbin & Morgan, P.A., by David C. Pishko for defendants-appellees.*

WYNN, Judge.

To prevail on a claim of unfair and deceptive trade practices, under Chapter 75 of the North Carolina General Statutes, a plaintiff must show the defendant committed an unfair or deceptive act or practice, in or affecting commerce, and that the plaintiff was injured thereby. In this case, the record shows that Plaintiff failed to present evidence from which a jury could reasonably calculate damages. Accordingly, we hold that the trial court did not err in granting Defendant's Motion for a Directed Verdict.

Plaintiff, Castle McCulloch, Inc., owns and operates a facility in Jamestown, North Carolina used primarily for weddings and wedding receptions. In 1999, Castle McCulloch also began holding bridal shows at its facility. At a bridal show various vendors—caterers, photographers, florists, musicians, etc.—display their products and services to brides. In January 1999, Castle McCulloch's first bridal show had twenty-six vendors and 150 brides. By June 2001, the bridal show consisted of seventy vendors and 506 brides. The January 2003 bridal show included 753 brides and fifty-five vendors.

Castle McCulloch charges each vendor $650 per booth, unless they are a "preferred vendor" in which case the charge is only $325-350. A "preferred vendor" at Castle McCulloch has its literature included in a bridal notebook given to all brides that use Castle McCulloch, and the brides are encouraged to book services with the "preferred vendors." In addition, Castle McCulloch markets the "preferred vendors" at various wedding shows its employees attend around North Carolina. In exchange for this marketing service, all "preferred vendors" must pay Castle McCulloch fifteen percent (ten percent for caterers) of all sales they make to brides holding their events at Castle McCulloch. There is no charge for brides to attend the bridal show if they pre-register.

Defendant, Donald Lee Freedman, operates three large wedding shows a year in Greensboro, North Carolina and two in Winston-Salem, North Carolina. Annually, Freedman rents booths to about 400 vendors at his bridal shows collectively at a rate of $640 per booth. Most brides are charged a ten dollar entrance fee to Freedman's shows.

In March 2001, Freedman conducted a survey questionnaire asking fifteen local caterers and four local wedding planners to grade various reception sites that allow outside caterers. Thirteen of the caterers were chosen from a list of the top fifteen caterers in the Triad area (two were removed because they did not caterer weddings) and Freedman added two more caterers that were frequently used for weddings. Along with five other sites, Castle McCulloch was one of the facilities graded. Each facility was given a letter grade in six categories—professionalism, integrity, personal service, convenience, preparation/amenities, and hidden costs. Freedman received responses from fifteen vendors and averaged the letter grades into a final list. Castle McCulloch received the worst grades with four "Cs" and two "Ds." Some of the vendors who were sent the questionnaire were Castle McCulloch's "preferred vendors," while one vendor had been banned from performing services there. The survey results were sent to the nineteen vendors that the questionnaire was originally sent to, along with a few other vendors. It was not given to any brides.

In August 2001, Freedman sent Dave Card of After Five Framing a sheet entitled "How can I tell a *Good* bridal show from a not-so-good one?" in response to Card inquiring into joining either Freedman's or Castle McCulloch's bridal show. Card eventually joined Castle McCulloch's bridal show. The sheet contained the following pertinent sections:

\*\*\*

· KICKBACK FEES. Believe it or not, some shows hit you for a percentage of your hard-won sales. *If you feel like you are not currently paying enough taxes, you'll love this type of deal.*

REAL BRIDES. Do most brides get into the show for free? Such "brides" are not your best prospects: heck, access to free caterers' food is enough to draw a crowd. *Look for a show where 90+% pay for tickets: now those are brides who are planning weddings!*

\*\*\*

On 16 November 2001, Castle McCulloch filed a complaint against Freedman alleging unfair and deceptive actions constituting an unfair trade practice in violation of Chapter 75 on the North Carolina General Statutes. The case went to trial on 24 February 2004, and at the close of Castle McCulloch's evidence the

trial court granted Freedman's motion for a directed verdict. Castle McCulloch appealed.

---

On appeal, Castle McCulloch argues that the trial court erred in (A) granting Freedman's Motion for a Directed Verdict, (B) not allowing its economic expert to testify as to damages, and (C) granting Freedman's Motion for Costs and Attorneys Fees. We disagree.

## A. Directed Verdict

[1] Castle McCulloch first contends that the trial court erred in granting Freedman's Motion for a Directed Verdict at the close of its evidence when it had properly stated its case within the meaning of section 75-1.1 of the North Carolina General Statutes. We disagree.

A motion for a directed verdict under Rule 50(a) of the North Carolina Rules of Civil Procedure presents the same question for both trial and appellate courts: whether the evidence, taken in a light most favorable to plaintiff, was sufficient for submission to the jury. *Helvy v. Sweat*, 58 N.C. App. 197, 199, 292 S.E.2d 733, 734, *disc. review denied*, 306 N.C. 741, 295 S.E.2d 477 (1982). The question of the evidence's sufficiency is a matter of law, and the motion should be reversed if there is more than a scintilla of evidence to support all the elements of plaintiff's *prima facie* case. *S. Ry. Co. v. O'Boyle Tank Lines, Inc.*, 70 N.C. App. 1, 4, 318 S.E.2d 872, 875 (1984). Therefore, this Court reviews the record and transcript *de novo*, reversing upon a finding of more than a scintilla of evidence supporting each element of plaintiff's *prima facie* case. *Whitt v. Harris Teeter, Inc.*, 165 N.C. App. 32, 46, 598 S.E.2d 151, 160 (2004).

To prevail on a claim of unfair and deceptive trade practices, a plaintiff must show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby. *See Canady v. Mann*, 107 N.C. App. 252, 260, 419 S.E.2d 597, 602 (1992); N.C. Gen. Stat. § 75-1.1 (2004). The plaintiff must also establish it "suffered actual injury as a proximate result of defendants' misrepresentations or unfair conduct." *First Atl. Mgmt., Corp. v. Dunlea Realty, Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998) (citation omitted).

Here, the trial court concluded that "the plaintiff's evidence is insufficient as a matter of law to establish each of the elements of the plaintiff's claim and that the defendants' Motion should be granted." The trial court found that Castle McCulloch failed to establish with certainty the existence of any actual damages caused by Freedman.

The burden of proving damages is on the party seeking them. *Olivetti Corp. v. Ames Bus. Sys., Inc.*, 319 N.C. 534, 547, 356 S.E.2d 578, 586 (1987). "As part of its burden, the party seeking damages must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." *Id.* at 547-48, 356 S.E.2d at 586.

At trial, Castle McCulloch argued the damages it sustained from Freedman's survey and bridal show tip sheet amounted to the payroll time employees spent talking about the survey and the revenue from the decline in vendor booths at the wedding shows. Denisa Harvey, general manager of Castle McCulloch, testified at trial that although they had no meeting logs, based on her personal notes from staff meetings, she estimated that Castle McCulloch employees spent fifty to seventy hours working on the reaction to the Freedman survey and the average employee made ten dollars per hour. All employees were on the payroll and there was no overtime or additional employees hired in response to Freedman's survey. Richard Harris, president of Castle McCulloch, testified at trial that he calculated Castle McCulloch lost revenue in the amount of $33,000 to $67,000 due to Freedman's survey. Harris reached these numbers by calculating the amount of vendors lost since the highest point (seventy) to the current number (fifty-five) and multiplied this by $650 (the charge for a booth to a non-preferred vendor) to reach $33,000. He calculated the $67,000 by looking at the amount of vendors his show would have had if the number of vendors continued to grow as it previously had before the drop off.

The damages argued by Castle McCulloch regarding the lost vendor revenue are essentially damages for lost profits. "North Carolina courts have long held that damages for lost profits will not be awarded based upon hypothetical or speculative forecasts of losses." *Iron Steamer, Ltd. v. Trinity Rest., Inc.*, 110 N.C. App. 843, 847, 431 S.E.2d 767, 770 (1993). This Court has chosen to evaluate the quality of evidence of lost profits on an individual case-by-case basis in light of certain criteria to determine whether damages have been proven with "reasonable certainty." *Id.* at 847-48, 431 S.E.2d at 770.

In *Iron Steamer*, the defendant leasee operated a restaurant and his gross revenues for August, September, October, and November of 1989 were lower than the revenues from May, June, or July of that year. *Id.* at 848, 431 S.E.2d at 771. The trial court found that, but for the plaintiff's breach of contract, "the gross sales figures for a restau-

rant of that type and location, for the month of August, should have been similar to the gross sales figures for the month of July." *Id.* The defendant estimated his lost profits for the months of August through November, by estimating the gross sales figures would have been the same as in July and subtracting what he thought would have been the additional expenses for those months. *Id.* at 848-49, 431 S.E.2d at 771. This court found "no factual basis upon which a jury could calculate lost profits with a 'reasonable certainty.' [The defendant's] estimation of lost profits is based on assumptions that are purely speculative in nature." *Id.* at 849, 431 S.E.2d at 771. *See also Meares v. Nixon Constr. Co.*, 7 N.C. App. 614, 623, 173 S.E.2d 593, 599 (1970) (an estimate of anticipated profits does not provide an adequate factual basis for a jury to ascertain the measure of damages).

Here, as in *Iron Steamer*, Castle McCulloch merely speculated as to the number of vendors that would have attended the bridal show but for Freedman's survey. Castle McCulloch speculated that the number of vendors would not have decreased or the rate of growth would not have slowed. No evidence was presented to show that any vendor left Castle McCulloch's bridal show as a result of Freedman's survey. Castle McCulloch presented no evidence as to why those fifteen vendors left the bridal show. Also, Castle McCulloch assumed that all the missing vendors paid the full booth price without presenting evidence that the vendors who left were not "preferred vendors" who paid half that price. Additionally, Castle McCulloch subtracted nothing for the additional setup or labor costs needed for those additional vendors.

Similarly, the only evidence Castle McCulloch presented regarding damages from payroll expenses was the general manager's testimony that she looked over her personal notes from some meetings and she estimated the time and then took an average hourly wage figure. This is far from a reasonably certain calculation. There were no meeting minutes or attendance logs of who was at these meetings. Nor was there any breakdown of how much time each individual employee spent and their individual wage.

After reviewing the entire record, we find no evidence from which a jury could calculate lost profits from vendors or payroll damages with a "reasonable certainty." *Iron Steamer, Ltd.*, 110 N.C. App. at 847, 431 S.E.2d at 770. As Castle McCulloch failed to present evidence that it suffered actual injury as a proximate result of Freedman's misrepresentations or unfair conduct, the trial court did

not err in granting Freedman's motion for a directed verdict. *First Atl. Mgmt., Corp.*, 131 N.C. App. at 252, 507 S.E.2d at 63.

## B. Expert Testimony

**[2]** Castle McCulloch next argues that the trial court erred in not allowing its expert to testify regarding damages because Freedman opened the door to the testimony by his cross-examination of Harris. We disagree.

Before trial, the trial court ruled that Castle McCulloch's expert witness, Erskine Walther, would not be permitted to testify concerning any economic impact Freedman's survey may have had on Castle McCulloch's business because his opinion had not been properly disclosed to Freedman in discovery.

On direct examination Harris testified concerning the number of vendors. "Well, well, we get a peak in June of 2001. We had 70 vendors. We currently have 55, moved around in 50s, 60s. Generally falling since June of 2001." On cross-examination, Freedman questioned Harris on his testimony regarding vendor numbers as it conflicted with his earlier deposition testimony. At his deposition, Harris stated he had "more vendors, more brides, more money." Harris then asked if he could explain the differing testimonies and stated that Walther's economic data showed him he had "been hurt."

We hold that Freedman did not open the door to Walther's testimony regarding damages. Defense counsel only questioned Harris as to the differing vendor numbers he testified to at his deposition and at trial. Harris interjected in his answer that he received information from Walther, the defense did not introduce this. "[W]hen a party first raises an issue, it opens the door to questions in response to that issue and cannot later object to testimony regarding the subject raised." *Middleton v. Russell Group, Ltd.*, 126 N.C. App. 1, 23-24, 483 S.E.2d 727, 740 (1997). However, since Freedman did not first raise the issue regarding Walther's testimony regarding damages or the issue of the decline in vendors, the door was not opened for Walther's testimony. Therefore, the trial court did not err in refusing to allow Walther's testimony regarding damages.

## C. Costs and Attorney's Fees

**[3]** Castle McCulloch argues the trial court erred in awarding costs and attorney's fees to Freedman. We disagree.

CASTLE McCULLOCH, INC. v. FREEDMAN

[169 N.C. App. 497 (2005)]

Section 75-16.1 of the North Carolina General Statutes provides that

> [i]n any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee . . . to be taxed as a part of the court costs and payable by the losing party, upon a finding by the presiding judge that: . . . (2) The party instituting the action knew, or should have known, the action was frivolous and malicious.

N.C. Gen. Stat. § 75-16.1 (2004). The award of attorneys' fees under section 75-16.1 of the North Carolina General Statutes is within the sound discretion of the trial judge. *Borders v. Newton*, 68 N.C. App. 768, 770, 315 S.E.2d 731, 732 (1984). A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason. *Smith v. Beaufort County Hosp. Ass'n, Inc.*, 141 N.C. App. 203, 210, 540 S.E.2d 775, 780 (2000).

Castle McCulloch argues that the trial court made no finding that the action was frivolous and malicious and there was no evidence to support such a finding. In its 10 July 2003 order, the trial court found that "the plaintiff knew, or should have known, that it would be unable to establish any damages arising from the alleged conduct of the defendants and that this action was frivolous and malicious." To support this finding, the trial court went on to state that "[t]he plaintiff failed to present evidence sufficient to prove that it's [sic] business had suffered any economic injury caused by any of the alleged actions by the defendants." Here, the record shows that Castle McCulloch did not offer the testimony of any vendor that left its wedding show because of Freedman's tip sheet or questionnaire.

Moreover, the trial court made a finding of fact that the action was frivolous and malicious and supported its finding. Although, the dissent does not agree that this is competent evidence to support the trial court's finding of frivolous and malicious, we conclude that the trial court's decision was not manifestly unsupported by reason. *Smith*, 141 N.C. App. at 210, 540 S.E.2d at 780.

Finally, we point out that section 6-20 of the North Carolina General Statutes provides that "costs may be allowed or not, in the discretion of the court[.]" N.C. Gen. Stat. § 6-20 (2004). Where the court has taxed costs in a discretionary manner its decision is not reviewable. *Dixon, Odom & Co. v. Sledge*, 59 N.C. App. 280, 286, 296

CASTLE McCULLOCH, INC. v. FREEDMAN

[169 N.C. App. 497 (2005)]

S.E.2d 512, 516 (1982). As the trial court awarded costs in its discretion, we do not review that decision on appeal.

Affirmed.

Judge McGEE concurs.

Judge TYSON concurs in part and dissents in part.

TYSON, Judge concurring in part, dissenting in part.

I concur in the majority's decision to affirm the trial court's grant for a directed verdict and that Freedman's cross-examination of Castle McCulloch's expert witness was insufficient to "open the door" to testimony regarding the decline in vendors. I disagree with the majority's decision to affirm the trial court's award of attorney's fees. I also vote to dismiss Castle McCulloch's assignment of error to the trial court's award of costs to Freedman. I respectfully dissent.

## I. Attorney's Fees

The majority's opinion concludes, but does not set forth any evidence in the record to support the trial court's finding that "[Castle McCulloch] failed to present evidence sufficient to prove that its business has suffered any economic injury caused by any of the alleged actions by [Freedman]." The majority's opinion concludes this finding supports a conclusion of law of "frivolous and malicious" conduct by Castle McCulloch. I disagree. No evidence supports the trial court's finding that Castle McCulloch's claims were "frivolous and malicious," and its prior rulings show otherwise.

The award of attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1 rests within the sound discretion of the trial court and cannot be reversed absent a showing that its determinations are "manifestly unsupported by reason." *Buford v. General Motors Corp.*, 339 N.C. 396, 406, 451 S.E.2d 293, 298 (1994) (citations omitted).

Here, the trial court found, "Following the *denial of the defendants' Motion* of Summary Judgment on February 18, 2003, *the plaintiff* knew, or should have known, that it would be unable to establish any damages arising from the alleged conduct of the defendants and that this action was frivolous and malicious." (Emphasis supplied). A denial of defendants' motion to dismiss under Rule 12(b)(6) and their motion for summary judgment under Rule 56 cannot support the trial

court's conclusion that Castle McCulloch, as plaintiff, "knew, or should have known," its complaint was "frivolous and malicious."

### A. Rule 12(b)(6)

In his answer, Freedman asserted that Castle McCulloch failed "to state a claim upon which relief can be granted and should therefore be dismissed pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure." *See* N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2003). The trial court did not grant Freedman's motion to dismiss accompanying their answer. The assertion of this defense followed by the trial court's failure to dismiss Castle McCulloch's complaint indicates that Castle McCulloch's complaint stated a "claim upon which relief can be granted" and was not "frivolous and malicious." N.C. Gen. Stat. § 1A-1, Rule 12(b)(6); N.C. Gen. Stat. § 75-16.1.

### B. Summary Judgment

The standard of review for summary judgment is well established by the court.

" 'The party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact.' " *Pacheco v. Rogers and Breece, Inc.*, 157 N.C. App. 445, 477, 579 S.E.2d 505, 507 (2003) (quoting *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985)).

A defendant may show entitlement to summary judgment by "(1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense which would bar the claim." *James v. Clark*, 118 N.C. App. 178, 181, 454 S.E.2d 826, 828, disc. review denied, 340 N.C. 359, 458 S.E.2d 187 (1995). Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 470, 251 S.E.2d 419, 422 (1979).

*Draughon v. Harnett County Bd. of Educ.*, 158 N.C. App. 208, 580 S.E.2d 732 (2003).

Following hearing, the trial court denied Freedman's motion for summary judgment. The trial court's denial of Freedman's motion establishes that Castle McCulloch's complaint, affidavits, and forecast of evidence sufficiently presented "genuine issues of material

**CASTLE McCULLOCH, INC. v. FREEDMAN**

[169 N.C. App. 497 (2005)]

fact" to support its causes of action, and that Freedman had failed to show or establish a defense to defeat Castle McCulloch's claims. *See id.*; *see also* N.C. Gen. Stat. § 1A-1, Rule 56 (2003).

Because Castle McCulloch prevailed over Freedman's assertion of a Rule 12(b)(6) defense and a Rule 56 motion for summary judgment, no evidence supports the trial court's conclusion that Castle McCulloch's complaint is wholly "frivolous or malicious." Otherwise, the trial court would have either dismissed Castle McCulloch's complaint under Rule 12(b)(6) or granted Freedman's motion for summary judgment pursuant to Rule 56. *See First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998) (requiring evidence of "actual injury" as an element to a cause of action for unfair and deceptive trade practices).

As Castle McCulloch prevailed in both instances, the trial court abused its discretion when it concluded that Castle McCulloch's action was "frivolous and malicious." The lack of a dismissal for Castle McCulloch's failure to state a claim and the denial of Freedman's motion for summary judgment cannot support a finding that Castle McCulloch's "knew or should have known that its action was frivolous and malicious," as required by N.C. Gen. Stat. § 75-16.1(2). The trial court's order awarding attorney's fees to Freedman is "manifestly unsupported by reason." *Buford*, 339 N.C. at 406, 451 S.E.2d at 298. The trial court's finding of fact does not support its conclusion of law and award of attorney's fees to Freedman is error. That portion of the judgment appealed from should be reversed.

## II.  Costs

Castle McCulloch's assignment of error to the trial court's award of costs is not properly before this Court and should be dismissed.

Freedman moved for costs pursuant to N.C. Gen. Stat. §§ 6-20 and 7A-305. N.C. Gen. Stat. § 7A-305(d) lists expenses that are recoverable. "The trial court . . . is prohibited from assessing costs in civil cases which are neither enumerated in section 7A-305 nor provided by law." *Crist v. Crist*, 145 N.C. App. 418, 424, 550 S.E.2d 260, 265 (2001) (citation omitted). N.C. Gen. Stat. § 6-20 (2003) provides that "costs may be allowed or not, in the discretion of the court." "The trial court's discretion to tax costs pursuant to N.C. Gen. Stat. § 6-20 is not reviewable on appeal absent an abuse of discretion." *Cosentino v. Weeks*, 160 N.C. App. 511, 516, 586 S.E.2d 787, 789-90 (2003).

**LOREDO v. CSX TRANSP., INC.**

[169 N.C. App. 508 (2005)]

Castle McCulloch's brief fails to assert any argument or cite to any authority to support a reversal of the trial court's award of costs to Freedman. This assignment of error is not properly before this Court. I would dismiss this portion of Castle McCulloch's assignment of error. N.C.R. App. P. 28(b)(6) (2004).

### III.  Conclusion

I concur with the majority's opinion to affirm the trial court's award of a directed verdict for Freedman and its discussion of Freedman's cross-examination of Castle McCulloch's expert witness. I disagree with the holding in the majority's opinion to affirm the trial court's award of attorney's fees to Freedman on the grounds that Castle McCulloch's action was "frivolous and malicious." I would dismiss Castle McCulloch's assignment of error regarding costs. *See* N.C.R. App. P. 28(b)(6) (2004). I respectfully dissent.