CAPITAL OUTDOOR ADVERTISING, INC., CAROLINA POSTERS CORPORATION, HARRIS SIGNS, INC., HOGAN OUTDOOR OF RALEIGH, INC., AND WHITECO INDUSTRIES, INC., T/A WHITECO METROCOM, INC. v. THE CITY OF RALEIGH, A NORTH CAROLINA MUNICIPAL CORPORATION

No. 136PA93

(Filed 29 July 1994)

1. **Judgments § 43 (NCI4th)— dismissal of complaint—jurisdiction to sign order out of session**

The trial court had jurisdiction under N.C.G.S. § 7A-47.1 to enter an order dismissing plaintiffs' complaint out of session without the consent of the parties since the order did not require a jury and was signed and entered in the proper county and proper judicial district. Furthermore, the out-of-session order was also authorized by N.C.G.S. § 1A-1, Rule 6(c), which provides that the expiration of a court session has no effect on the court's power "to do any act or take any proceeding," since this rule clearly allows a superior court judge to sign a written order out of session without the consent of the parties so long as the hearing to which the order relates was held in the trial judge's assigned term and assigned district.

**Am Jur 2d, Judgments §§ 58 et seq.**

2. **Limitations, Repose, and Laches § 86 (NCI4th); Zoning § 24 (NCI4th)— outdoor advertising sign ordinance—attack on constitutionality—statute of limitations**

Plaintiff billboard companies' 42 U.S.C. § 1983 claim contesting the constitutionality of a city's October 1983 outdoor advertising sign ordinance accrued on the effective date of the ordinance pursuant to N.C.G.S. § 160A-364.1. Therefore, plaintiffs' action filed five and one-half years after the effective date of the ordinance was barred by both the nine-month statute of limitations for an action contesting the validity of any zoning ordinance or amendment thereto contained in N.C.G.S. §§ 1-54.1 and 160A-314.1, which has been applied by the N.C. Court of Appeals to § 1983 sign cases, and by the three-year personal injury statute of limitations set forth in N.C.G.S. § 1-52(5), which has been applied by the federal courts of the Fourth Circuit to such cases.

**Am Jur 2d, Zoning and Planning §§ 322 et seq., 1048-1050.**

CAPITAL OUTDOOR ADVERTISING v. CITY OF RALEIGH

[337 N.C. 150 (1994)]

On discretionary review of a unanimous decision of the Court of Appeals, 109 N.C. App. 399, 427 S.E.2d 154 (1993), vacating an order of Hight, J., dismissing plaintiffs' complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, entered 4 November 1991 in Superior Court, Wake County, as a result of a motion hearing conducted at the 28 October 1991 Civil Session of Superior Court, Wake County. Heard in the Supreme Court 13 October 1993.

*Wilson & Waller, P.A., by Betty S. Waller and Brian E. Upchurch, for plaintiff-appellees.*

*Thomas A. McCormick, City Attorney, by Ira J. Botvinick, Deputy City Attorney, for defendant-appellant.*

MEYER, Justice.

The dispositive issues before this Court are (1) whether the trial judge had jurisdiction to enter the order dismissing plaintiffs' complaint, and (2) whether the trial judge erred in dismissing plaintiffs' complaint for the reason that it was time-barred. The Court of Appeals panel below (1) held that the trial judge erred in signing the dismissal order in question because he lacked jurisdiction to sign the order out of term, and (2) did not reach the issue of the timeliness of the filing of the complaint.

Having determined that the trial judge did not err in entering the order of dismissal out of term and that the plaintiffs' complaint was not timely filed, we now reverse the decision of the Court of Appeals and remand the case for reinstatement of Judge Hight's order dismissing the plaintiffs' complaint.

Plaintiffs are five outdoor advertising companies that own fifty-six billboards in Raleigh. On 18 October 1983, the City of Raleigh adopted an ordinance, Ordinance No. (1983) 210 TC 198, codified as section 10-2066 (presently section 10-284) of the Raleigh City Code (hereinafter "the October 1983 ordinance"), which became effective 23 October 1983. The ordinance amended an earlier 1979 ordinance that established zoning regulations for signs in Raleigh by reducing the size of permissible off-premises signs and restricting their location to "industrial zones" as defined in the ordinance, declared existing over-sized signs to be nonconforming uses, established an amortization period for nonconforming signs in lieu of any form of compensation, and prohibited the construction of any new nonconforming signs.

[337 N.C. 150 (1994)]

The October 1983 ordinance was entitled "An Ordinance Regulating the Placement, Area, and Height of Outdoor Advertising Signs." Since its effective date, all decisions relating to the permitting, locating, sizing, spacing, zoning conformance status, and amortization of billboards have been made according to this ordinance. The October 1983 ordinance, in pertinent part, requires that all nonconforming outdoor advertising signs be made to conform to the ordinance or be discontinued by 24 April 1989 unless application of the ordinance is specifically prohibited by state statute.

The nature of the issues raised on this appeal makes it unnecessary to set forth the contents of the ordinance in this opinion. We briefly characterize its contents only for the purpose of clarifying the issues. The October 1983 ordinance limits the area of off-premise outdoor advertising signs (billboards) facing four-lane streets to 150 square feet and limits the area of off-premise billboards facing streets with less than four lanes to 75 square feet. Outdoor advertising signs are restricted to a maximum height of 30 feet. Each billboard must generally be spaced at least 1,000 feet from another billboard and must be located at least 400 feet from a zoning district that permits dwellings. The ordinance is not a total prohibition of outdoor advertising signs. Subject to the spacing and locational standards, outdoor advertising signs may be located in Industrial-I and Industrial-II districts. The ordinance established a five and one-half year amortization period for removal of nonconforming signs. The ordinance specifically states that the amortization does not apply to billboards adjacent to highways on the National System of Interstate and Defense Highways or to the Federal-Aid Primary Highway System because regulation of such signs is prohibited by North Carolina statute. N.C.G.S. § 136-131.1 (1993). The five and one-half year amortization period ended on 24 April 1989.

Except for ordinary maintenance and poster panel replacements, nonconforming billboards, by virtue of other zoning regulations that are not the subject of this case, could not be altered, reerected, or removed during or after the amortization period unless the entire billboard was brought into conformity with the October 1983 ordinance.

Some preexisting billboards continued to meet the size and height requirements of the October 1983 ordinance, but others did not. None of the fifty-six billboards owned by the plaintiff billboard companies conformed to the requirements of the ordinance. The

entire sign inventory of four of the five plaintiff companies was well in excess of the ordinance's allowable size limits. Of the plaintiffs' fifty-six billboards, twenty-seven had to be amortized on or before the expiration of the five and one-half year amortization period. Their remaining signs were exempted from the amortization requirements pursuant to N.C.G.S. § 136-131.1 because of their proximity to federal highway system roads.

Plaintiffs received a notification letter dated 6 January 1989 from the City demanding the removal of their nonconforming billboards by the April 1989 deadline. They filed a complaint on 12 April 1989 challenging the constitutionality of the ordinance. Specifically, plaintiffs contend that the ordinance constitutes a regulatory taking of plaintiffs' property for which no remedy is provided and is therefore illegal, void, and unconstitutional. Plaintiffs also contend that the spacing, height, and size restrictions in the ordinance and the "amortization clause" contained therein were enacted solely for aesthetic purposes and take the most substantial part of the value of plaintiffs' property. Consequently, the same is outside the police power delegated to the City and violates the laws and constitutions of North Carolina and the United States.

Plaintiffs brought this claim under 42 U.S.C. § 1983 and sought a declaratory judgment that the ordinance enacted by the City and, in particular, the amortization provisions thereof are void and requested an injunction permanently enjoining the City from enforcing any existing or subsequently enacted criminal and civil penalties. As previously indicated herein, the trial judge dismissed the action as being time-barred, and plaintiffs appealed. The Court of Appeals reversed the trial court, holding that the trial judge erred in signing the dismissal order out of term. The Court of Appeals did not address the issue of the timeliness of the filing of the complaint. We allowed discretionary review of the Court of Appeals' decision and therefore have before us the issue of whether the trial court had jurisdiction to enter the order dismissing the complaint. Because we reverse the Court of Appeals on that issue, we necessarily reach the issue of the timeliness of the filing of the complaint. We do not address the other issues raised by the complaint.

We first address the issue of whether the trial judge had jurisdiction to enter the order dismissing the plaintiffs' complaint. As did the Court of Appeals, we take judicial notice of the assignment of Judge Hight to hold court, *Baker v. Varser*, 239 N.C. 180, 186, 79 S.E.2d 757,

761-62 (1954), and that during the fall term[1] of 1991 (1 July 1991 to 1 January 1992), Judge Hight was assigned to the Tenth Judicial District (a single-county district consisting of Wake County); he was assigned to hold the 28 October 1991 session[2] of Wake County Superior Court, a one-week session; this session of superior court was adjourned by Judge Hight on 1 November 1991; and Judge Hight was assigned to hold the 4 November 1991 session of Wake County Superior Court, a one-week session. Nothing in the record of this proceeding in the trial court indicates that Judge Hight extended the 28 October 1991 session pursuant to N.C.G.S. § 15-167 or that the parties or their attorneys consented to entry of the order of dismissal in a session of court other than the session in which the motion was heard. Judge Hight heard the City's Rule 12(b)(6) motion on 29 October but made no ruling on the motion until 4 November, the Monday following the expiration on the previous Friday of the 28 October session. Thus, his order was entered within the proper county, within the proper judicial district, but out of session.

While lamenting the necessity of its decision and suggesting that the problem deserved legislative inquiry, the Court of Appeals nevertheless held that because the parties did not consent on the record and in a timely fashion, Judge Hight's dismissal order was null and void. We disagree.

In its opinion, the Court of Appeals noted the following oft-repeated rules: Except by agreement of the parties, an order of the superior court must be entered "during the term, during the session, in the county and in the judicial district where the hearing was held." *State v. Boone*, 310 N.C. 284, 287, 311 S.E.2d 552, 555 (1984). An order entered inconsistent with this rule is "null and void and of no legal effect." *Id.* We have held that, to be valid, consent to entry of an order outside the county in which the action is pending must appear

---

1, 2. As noted by the panel below, the words "session" of court and "term" of court are often used interchangeably. *Black's Law Dictionary* 1470 (6th ed. 1990). "When used with reference to a court, [*term*] signifies the space of time during which the court holds a session." *Id.* "A *session* signifies the time during the term when the court sits for the transaction of business . . . ." *Id.* Although 1962 amendments to the North Carolina Constitution changed the word "term" to "session" when referring to the period of time during which superior court judges are assigned to court, *see* N.C. Const. art. IV, § 9(2); 1 Dickson Phillips, *McIntosh North Carolina Practice and Procedure* § 107 (2d ed. Supp. 1970), the continued use of both "term" and "session" is proper, *see, e.g., State v. Boone*, 310 N.C. 284, 287, 311 S.E.2d 552, 555 (1984). The use of "term" has come to refer to the typical six-month assignment of superior court judges, and "session" to the typical one-week assignments within the term.

CAPITAL OUTDOOR ADVERTISING v. CITY OF RALEIGH

[337 N.C. 150 (1994)]

"in a writing signed by the parties or their counsel, or the judge should recite the fact of consent in the order or judgment he directs to be entered of record—which is the better way; or such consent should appear by fair implication from what appears in the record." *Godwin v. Monds*, 101 N.C. 354, 355, 7 S.E. 793, 794 (1888). The same is true for consent to an entry of an order out of term, session, or district. Failure to object to the entry of an order out of the session does not, however, constitute consent. *See Boone*, 310 N.C. at 288, 311 S.E.2d at 555-56. Likewise, preparation of a proposed order for the trial judge to sign out of the session cannot infer consent. *Turner v. Hatchett*, 104 N.C. App. 487, 490, 409 S.E.2d 747, 749 (1991).

From their earliest days, our courts have recognized the power and authority of our legislature to provide for the transaction of business in the superior court out of term except for the trial of issues of fact requiring a jury.

In the early seminal case in this area, *Bynum v. Powe*, 97 N.C. 374, 2 S.E. 170 (1887), this Court, though finding no statute then authorizing a judgment of voluntary nonsuit to be entered out of term, acknowledged the authority of the legislature to provide otherwise.

*It thus appears plainly that the Legislature has ample power to establish, define and limit the jurisdiction of the Superior Courts, and prescribe the methods of procedure in them. This power must embrace the power to prescribe the extent, manner, time and place[] of exercising jurisdictional authority. . . .*

The Legislature may make such regulations as it shall deem fit and expedient, in the respects mentioned, and they will be operative if they do not conflict with provisions of the Constitution . . . . As to the trial of issues of fact by a jury, [the superior courts] shall not be continuously open—they shall be open only at stated period—in term time—but as to all other matters, they shall be *continuously open*—open for the transaction of any—all—business that may properly come before them, at the time, in the order, at the place, and in the way prescribed, but not necessarily that such business shall be continuously transacted. They are continuously open, so that *the Legislature may prescribe that certain classes of business shall be transacted only in term time, certain other classes may be transacted out of, or in term time, or that all business may be transacted at any time without regard to terms of the court, except as to the trial of issues of fact by a jury. . . .*

. . . .

> ... *[T]he Legislature can provide for the continuous trans-*
> *action of business of the Superior Courts of which they have*
> *jurisdiction without regard to stated terms thereof,* except as
> "to the trial of issues of fact requiring a jury," because they are
> always open . . . .

*Id.* at 379-81, 2 S.E. at 172 (emphasis added).

Through the years, this Court has continuously recognized the authority of the legislature to provide by statute for the transaction of business in the superior court out of term and out of county. *Patterson v. Patterson,* 230 N.C. 481, 484, 53 S.E.2d 658, 661 (1949) (judge cannot hear a case and make an order out of the county "unless authorized so to do by statute"); *State v. Humphrey,* 186 N.C. 533, 535, 120 S.E. 85, 87 (1923) (states the rule and recognizes exception "by reason of some express provision of law"); *Cox v. Boyden,* 167 N.C. 320, 321, 83 S.E. 246, 246 (1914) (judgment cannot be signed out of county unless authorized by statute); *Bank v. Peregoy,* 147 N.C. 293, 296, 61 S.E. 68, 70 (1908) (recognizing that an order may not be signed out of county except "in those cases for which special provision is made by the statute"); *Parker v. McPhail,* 112 N.C. 502, 504, 16 S.E. 848, 848 (1893) (order cannot be signed out of county except "in those cases specially permitted by statute"); *McNeill v. Hodges,* 99 N.C. 248, 249, 6 S.E. 127, 127 (1888) (orders may not be signed out of county "except in particular cases and respects specially provided for").

[1] The question presented here is whether there exists any statutory authority for the entry of the dismissal order out of session. We find that there is.

N.C.G.S. § 7A-47.1 provides:

> In any case in which the superior court in vacation has jurisdiction, and all the parties unite in the proceedings, they may apply for relief to the superior court in vacation, or during a session of court, at their election. Any regular resident superior court judge of the district or set of districts as defined in G.S. 7A-41.1(a) and any special superior court judge residing in the district or set of districts and the judge regularly presiding over the courts of the district or set of districts have concurrent jurisdiction throughout the district or set of districts in all matters and proceedings in which the superior court has jurisdiction out of session; *provided, that in all matters and proceedings not*

*requiring a jury* or in which a jury is waived, any regular resident superior court judge of the district or set of districts and any special superior court judge residing in the district or set of districts shall have concurrent jurisdiction throughout the district or set of districts with *the judge* holding the courts of the district or set of districts and any such regular or special superior court judge, in the exercise of such concurrent jurisdiction, *may hear and pass upon such matters and proceedings in vacation, out of session* or during a session of court.

N.C.G.S. § 7A-47.1 (1989) (emphasis added).

Defendant's Rule 12(b)(6) motion does not require a jury. Therefore, under the plain words of the statute, Judge Hight was authorized to sign the contested order out of session.

This is essentially the same statute analyzed by this Court in *Patterson v. Patterson*, 230 N.C. at 484, 53 S.E.2d at 661. In *Patterson*, we recognized that the authority permitting the signing of an order out of session was statutorily grounded, and the then-existing statutory framework was analyzed. The Court could find no statutory authority for the out-of-county, out-of-district contempt order, although there was statutory authority to enter the out-of-term order. The order was therefore vacated. However, unlike in *Patterson*, the order in this case was signed and entered in the proper county and proper judicial district. *See also Baker v. Varser*, 239 N.C. 180, 79 S.E.2d 757.

N.C.G.S. § 7A-47.1 was applied to uphold orders of the trial judge signed and entered out of session in *Towne v. Cope*, 32 N.C. App. 660, 665-66, 233 S.E.2d 624, 628 (1977), and in *E-B Grain Co. v. Denton*, 73 N.C. App. 14, 23-24, 325 S.E.2d 522, 528-29, *disc. rev. denied*, 313 N.C. 598, 330 S.E.2d 608 (1985).

Yet a second statute authorizes the out-of-session order, N.C.G.S. § 1A-1, Rule 6(c) (1990). Rule 6(c) of the Rules of Civil Procedure provides:

The period of time provided for the doing of any act or the taking of any proceeding is not affected or limited by the continued existence or expiration of a session of court. The continued existence or expiration of a session of court in no way affects the power of a court to do any act or take any proceeding, but no issue of fact shall be submitted to a jury out of session.

Applying the statute in *Feibus & Co. v. Construction Co.*, 301 N.C. 294, 305-06, 271 S.E.2d 385, 392 (1980), and in *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 678-80, 360 S.E.2d 772, 778-79 (1987), this Court rejected arguments that a nonconsensual order was void because it was signed and entered out of session.

In *Feibus & Co. v. Construction Co.*, the case was heard by the trial judge on a motion for summary judgment. The judge denied defendant's motion at the close of the hearing but did not sign the written order at that time. After the term of court expired, he signed the written order at his home, which was outside of the district. Defendant in that case argued that the trial judge's order granting summary judgment was invalid because it was signed out of term and district without defendant's consent. This Court held that defendant's contention was without merit. The Court explained that:

Rule 6(c) of the Rules of Civil Procedure provides that the expiration of a session of court has no effect on the court's power "to do any act or take any proceeding." G.S. § 1A-1, Rule 56(c) (1969). This rule clearly allows a written order to be signed out of term, especially when such an act merely documents a decision made and announced before the expiration of the term.

*Feibus & Co.*, 301 N.C. at 305, 271 S.E.2d at 392.

In *Daniels v. Montgomery Mut. Ins. Co.*, on facts very similar to those in *Feibus & Co.*, this Court again interpreted Rule 6(c). There, the superior court judge heard a motion to tax costs and announced his decision to tax plaintiff with defendant's expenses in the district during the session in which the motion was made. At the hearing, the judge determined and announced the nature of the penalty to be assessed against the plaintiff. We held that the fact that the order was subsequently signed and supplemented with the actual amounts did not alter the fact that the decision to tax plaintiff with defendant's costs was made and announced at the hearing. We said that it was clear that the delayed signing and filing of the order taxing plaintiff with costs had no effect on the authority of the trial judge to enter this order. Thus, the order taxing costs was held to be valid.

Rule 6(c) provides that the expiration of a court session has no effect on the court's power "to do any act or take any proceeding." The rule clearly allows a superior court judge to sign a written order out of session *without* the consent of the parties so long as the hear-

ing to which the order relates was held in term. *Barbee v. Jewelers, Inc.*, 40 N.C. App. 760, 761, 253 S.E.2d 596, 597-98 (1979).

Because there are two separate statutes that authorize the execution and entry of the dismissal order of the trial judge out of session, the decision of the Court of Appeals must be reversed.

We believe the correct rule to be, as stated by a contemporary writer of the subject, "Rule 6(c) permits a judge to sign an order out of term [which we interpret to mean both out of the session and out of the trial judge's assigned term] and out of district without the consent of the parties so long as the hearing to which the order relates was held in term and in district." W. Brian Howell, *Howell's Shuford North Carolina Civil Practice and Procedure* § 6-7, at 68 (4th ed. 1992).

We note that our General Assembly has recently enacted an amendment to N.C.G.S. § 1A-1, Rule 58, effective 1 October 1994 and applicable to all judgments subject to entry on and after that date, which provides, *inter alia*:

> Subject to the provisions of Rule 54(b), a judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk . . . . Consent for the signing and entry of a judgment out of term, session, county, and district shall be deemed to have been given unless an express objection to such action was made on the record prior to the end of the term or session at which the matter was heard.

1994 N.C. Sess. Laws ch. 594.

[2] Having determined that the trial judge had jurisdiction to enter the order dismissing plaintiffs' complaint, we now turn to the issue not addressed by the panel below—whether the trial judge erred in dismissing plaintiffs' complaint for the reason that it was time-barred. We conclude that the trial judge did not err.

The principal issues to be determined in this regard are (1) what is the applicable statute of limitations,[3] and (2) when does it begin to run. Five pages of Judge Hight's seven-page order are dedicated to an examination and determination of these issues. He concluded that of

3. Because there is no federal statute of limitations applicable to suits under § 1983, "it is the rule that the applicable 'provision limiting the time in which an action [under § 1983] must be brought, must be borrowed from the analogous state statute of limitations.' " *Bireline v. Seagondollar*, 567 F.2d 260, 262-63 (4th Cir. 1977) (quoting *Cox v. Stanton*, 529 F.2d 47, 49 (4th Cir. 1975)).

CAPITAL OUTDOOR ADVERTISING v. CITY OF RALEIGH

[337 N.C. 150 (1994)]

the statutes of limitations that might possibly be applicable, all of them had expired by the time the plaintiffs filed their complaint on 12 April 1989, some five and one-half years after the effective date of the October 1983 ordinance, which was the date on which plaintiffs' cause of action accrued. We agree.

This precise issue, regarding this same ordinance, was addressed and decided by the Fourth Circuit Court of Appeals in favor of the City of Raleigh in *National Advertising Co. v. City of Raleigh*, 947 F.2d 1158 (4th Cir. 1991), *cert. denied*, —— U.S. ——, 118 L. Ed. 2d 593 (1992). In that case, the sign company filed its § 1983 complaint more than three years after the adoption of the October 1983 ordinance and approximately one month after the expiration of the five and one-half year amortization period. In its answer in that case, the City contended that the action was barred either by N.C.G.S. § 1-54.1, which establishes a nine-month limitation period for "an action contesting the validity of any zoning ordinance or amendment thereto," or by N.C.G.S. § 1-52(2), which establishes a three-year limitation period for lawsuits based on "liability created by statute, either state or federal." The District Court determined that N.C.G.S. § 1-52(2), the three-year statute, applied; that the cause of action accrued upon enactment of the ordinance; and that this action was barred. On appeal, the Fourth Circuit affirmed the trial court's granting of summary judgment for the City but found the applicable statute of limitation to be N.C.G.S. § 1-52(5)[4] relating to personal injury actions, rather than N.C.G.S. § 1-52(2).

In selecting N.C.G.S. § 1-52(5), relating to personal injury actions, as the applicable statute, the Fourth Circuit said this:

[T]he Supreme Court held that the analogous state statute of limitations most appropriate for § 1983 actions is the limitation period for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In 1989, the Supreme Court further refined *Wilson* by holding that

where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions.

---

4. N.C.G.S. § 1-52(5) provides:

(5) For criminal conversation, or for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated.

N.C.G.S. § 1-52(5) (Supp. 1993).

CAPITAL OUTDOOR ADVERTISING v. CITY OF RALEIGH

[337 N.C. 150 (1994)]

*Owens v. Okure,* 488 U.S. 235[, 249-50], 109 S.Ct. 573, 582, 102 L.Ed.2d 594[, 606] (1989) . . . . Thus, as courts since *Wilson* have recognized, the three-year period for personal injury actions set forth in § 1-52(5) is the North Carolina limitations period applicable to § 1983 actions. *Mallas v. Kolak,* 721 F.Supp. 748 (M.D.N.C. 1989); *Reagan v. Hampton,* 700 F.Supp. 850 (M.D.N.C. 1988); *Reed v. United Transp. Union,* 633 F.Supp. 1516, 1525 (W.D.N.C. 1986); *see also Keller v. Prince George's County,* 827 F.2d 952, 955 n. 2, 965 (4th Cir. 1987) (recognizing that *Wilson v. Garcia* requires all § 1983 actions to be characterized as personal injury tort actions for statute of limitations purposes).

*National Advertising Co. v. City of Raleigh,* 947 F.2d at 1162 n.2.

Two North Carolina statutes appear to address the issue quite specifically. The first of these is N.C.G.S. § 1-54.1, entitled "Nine months," which sets forth the time period within which such an action as this must be brought:

Within nine months an action contesting the validity of any zoning ordinance or amendment thereto adopted by a county under Part 3 of Article 18 of Chapter 153A of the General Statutes or other applicable law or adopted by a city under Chapter 160A of the General Statutes or other applicable law.

N.C.G.S. § 1-54.1 (Supp. 1993). The second, N.C.G.S. § 160A-364.1, entitled "Statute of limitations," provides:

A cause of action as to the validity of any zoning ordinance, or amendment thereto, adopted under this Article or other applicable law shall accrue upon adoption of the ordinance, or amendment thereto, and shall be brought within nine months as provided in G.S. 1-54.1.

N.C.G.S. § 160A-364.1 (1987).

A recent North Carolina appellate case applying statutes of limitations to state and federal constitutional challenges to municipal zoning regulations is *Pinehurst Area Realty, Inc. v. Village of Pinehurst,* 100 N.C. App. 77, 394 S.E.2d 251 (1990), *cert. denied,* 328 N.C. 92, 402 S.E.2d 417 (1991). In that case, the municipality also made a Rule 12(b)(6) motion to dismiss based on the statute of limitations. The Court of Appeals upheld the trial court's dismissal of the action based on the nine-month statute of limitations in N.C.G.S. § 1-54.1. In so doing, the court rejected the landowner's arguments that some

other and longer time period applied within which to bring challenges to zoning ordinances grounded on deprivation of constitutional rights:

> Zoning claims raise important public policy considerations. There is a strong need for finality with respect to zoning matters so that landowners may use their property without fear of a challenge years after zoning has apparently been determined. North Carolina courts have not held that violations of federal constitutional claims in zoning actions extend the usual nine-month statute of limitations. In *Sherrill v. Town of Wrightsville Beach,* 81 N.C. App. 369, 344 S.E.2d 357, *disc. rev. denied,* 318 N.C. 417, 349 S.E.2d 600 (1986), this Court held that plaintiff's claims for federal due process violations were barred by the nine-month statute of limitations. It is noteworthy that Sherrill was decided after *Wilson, supra.*

> We hold plaintiff's challenge to the 1985 zoning law based on alleged state and federal constitutional violations is barred by the nine-month statute of limitations. The trial court properly dismissed plaintiff's complaint for failure to state a claim for which relief could be granted.

*Id.* at 80-81, 394 S.E.2d at 253-54.

The *Pinehurst Area Realty, Inc.* case is in accord with the ruling rendered in an earlier 42 U.S.C. § 1983 challenge to a local zoning ordinance. *Sherrill v. Town of Wrightsville Beach,* 81 N.C. App. 369, 344 S.E.2d 357, *cert. denied & appeal dismissed,* 318 N.C. 417, 349 S.E.2d 600 (1986).

We find therefore that the federal courts of the Fourth Circuit are applying N.C.G.S. § 1-52(5), the three-year personal injury statute, to § 1983 sign cases, while our Court of Appeals is applying N.C.G.S. § 1-54.1, the nine-month statute for zoning claims, to the same factual situations.

While our nine-month statute of limitations contained in N.C.G.S. § 1-54.1 and N.C.G.S. § 160A-314.1 appears to treat the issue far more specifically than N.C.G.S. § 1-52(5) and while our North Carolina Court of Appeals decisions appear the better reasoned decisions on the issue, we need not resolve the matter in this case if the cause of action accrued as of the date of the adoption of the October 1983 ordinance as contended by the City, rather than as of the expiration of the amortization period as contended by the plaintiffs. If we con-

clude, as did the trial judge, that this cause of action accrued on the date of the adoption of the ordinance, then the action would be barred in any event by the three-year statute, N.C.G.S. § 1-52(5), and would necessarily be barred by the shorter nine-month statutes contained in N.C.G.S. § 1-54.1 and N.C.G.S. § 160A-364.1.

We now, therefore, address the issue of the date this cause of action accrued.

To begin our discussion, we note the pertinent provision of N.C.G.S. § 160A-364.1 that addresses specifically the time of accrual:

> A cause of action as to the validity of any zoning ordinance, or amendment thereto, adopted under this Article [Article 19 of Chapter 160A] or other applicable law shall accrue upon adoption of the ordinance, or amendment thereto . . . .

The challenged billboard regulations are a part of defendant City's zoning regulations. Under the clear wording of this statute, plaintiffs' cause of action arose upon the adoption of the October 1983 ordinance or, in this particular case, the effective date of that ordinance. While most ordinances are effective upon their passage, many of them provide that they shall become effective on a specified date certain in the future to allow time for affected parties to become aware of their adoption. See generally Eugene McQuillin, 5 The Law of Municipal Corporations § 15.39 (3d ed. 1992).

Plaintiffs' cause of action, for statute of limitations purposes, arose at the time the City's billboard ordinance first became effective because it was then that the regulation injured plaintiffs' property in clear and concrete fashion. This was the precise holding of National Advertising Co. v. City of Raleigh, 947 F.2d 1158.

It was the enactment of the October 1983 ordinance, with its size and placement provisions, that made each and every one of plaintiffs' billboards nonconforming, thereby subjecting them to removal. Removal of the signs by 24 April 1989 would not be required but for the spatial and size nonconformities created upon the adoption of the October 1983 ordinance. On 23 October 1983, plaintiffs' signs became nonconforming.

Plaintiffs' complaint alleges that the ordinance is what constitutes the alleged regulatory taking of plaintiffs' property. Plaintiffs, in their complaint, sought a permanent injunction to prohibit the enforcement of "the ordinance." The alleged wrongful state action

that forms the basis for plaintiffs' § 1983 action is the City's adoption of the October 1983 ordinance. It was on the effective date of the ordinance that the regulation of the size, height, location, placement, and separation requirements and the zoning conformance status of every existing billboard was fixed and finalized. It was on the effective date of the ordinance that the consequences of the existence of a nonconforming ordinance were conclusively set. It was on that precise date that the expected useful life of the plaintiffs' billboards was foreshortened.

It was on the effective date of the ordinance that, because of other then-existing zoning regulations, plaintiffs' signs could not be replaced or relocated. It was on this date that the reconstruction, repair, and rebuilding of plaintiffs' nonconforming billboards were restricted to an amount equal to 50% of their individual tax value. It was on the effective date of the ordinance that the ability of the plaintiffs to locate new billboards was restricted and the "neighborhood business" zoning district was placed off limits to billboards.

The cumulative effect of the requirements of the October 1983 ordinance significantly reduced the fair market value of each of plaintiffs' business operations in the City of Raleigh. This reality was acknowledged by United States District Court Judge Bullock in *Naegele Outdoor Advertising v. City of Durham*, 803 F. Supp. 1068, 1079 (1992), in which he noted that an expectation that there would be no diminished value caused by *enactment* of governmental sign regulations would not be logical in light of recent takings jurisprudence and the prior experience of outdoor advertisers in Fifth Amendment litigation.

In the case at bar, the trial judge concluded as follows: "Based on this record, the court concludes that plaintiffs suffered actual concrete injury on October 23, 1983 [the effective date of the ordinance], so that the cause of action arose on that date." This conclusion is fully supported by the record evidence. We hold that the plaintiffs' cause of action accrued on the effective date of the October 1983 ordinance and was thus time-barred.

There is a matter of fairness that should not escape our attention. Officials of several of the plaintiff billboard companies were well aware of the proposed ordinance long before it was adopted and, in fact, appeared and expressed their views in opposition to the proposed regulations at hearings before the Raleigh Appearance Commission when they were originally being formulated. Yet, plaintiffs

filed this action five and one-half years after the effective date of the ordinance and just twelve days before the expiration date of the five and one-half year amortization period. During the pendency of this suit, plaintiffs have continued to earn income on their nonconforming signs—years after the expiration date of the amortization period—and, in so doing, have gained advantages over their competition by continuing to maintain billboards that are four to eight times larger than newly erected signs. Plaintiffs have continued to offer advertisers bigger and taller signs than companies that have erected the smaller billboards now allowed under the ordinance. Plaintiffs have maintained their nonconforming billboards, while the two largest billboard companies in Raleigh have been compelled to remove nearly two hundred nonconforming signs. *National Advertising Co. v. City of Raleigh*, 947 F.2d 1158; *Major Media of the Southeast, Inc. v. City of Raleigh*, 792 F.2d 1269 (4th Cir. 1986), *cert. denied*, 479 U.S. 1102, 94 L. Ed. 2d 185 (1987).

In circumstances such as this, delay often becomes the motivating factor for a lawsuit, and parties in the position of these plaintiffs sometimes prefer that their litigation continue to languish in the courts. Litigation has already added more than five years to the amortization grace period, and twenty-seven billboards required to be removed on or before 24 April 1989 are still standing. Much of the inequity resulting from such cases may be prevented by an early determination of the legal issues presented.

The decision of the Court of Appeals is reversed, and this case is remanded to that court for further remand to the Superior Court, Wake County, for reinstatement of the judgment of Hight, J., entered 4 November 1991.

REVERSED AND REMANDED.