C. W. PUCKETT AND F. L. McCOLLUM, CO-PARTNERS TRADING AS FARMERS FLAG WAREHOUSE, v. ALBERT R. SELLARS.

(Filed 19 March, 1952.)

1. **Statutes § 8—**

   A remedial statute must be construed as a whole in the light of the evils sought to be eliminated, the remedies intended to be applied, and the objective to be attained.

2. **Statutes § 5a—**

   The intention of the lawmaking body is the heart of a statute.

3. **Same—**

   The word "may" will be construed "must" when necessary to effectuate the intent of a statute designed for the protection of public and private interests.

4. **Agriculture § 16—**

   In construing 7 USCA sec. 1314 in the light of the evils sought to be eliminated, the remedies intended to be applied, and the objective to be attained, *it is held* that its provision that a warehouseman, in paying the producer for tobacco, "may" deduct the penalty assessed for production of tobacco in excess of the quota allotted to the producer's farm, means "shall," and imposes the imperative duty on the warehouseman to deduct, in every instance, the penalty imposed.

5. **Statutes § 5a—**

   The courts will not adopt a construction that results in palpable injustice when the language of the statute is susceptible to another reasonable

construction which is just and is consonant with the purpose and intent of the act.

**6. Taxation § 35—**

>   Payment of an amount less than the penalty due the Federal Government because of error made by an agent of the Government in figuring the penalty, does not discharge the debt to the Government.

**7. Agriculture § 16: Money Paid § 1—**

>   Because of error in figuring by the agent of the Government, an amount less than the penalty due was deducted by the warehouseman in paying defendant for his tobacco. Upon later demand by the Government, the warehouseman paid the balance due on the penalty. *Held:* The warehouseman is entitled to recover from defendant the additional sum paid.

APPEAL by defendant from *Hatch, Special Judge,* January Term, 1952, LEE.

Civil action to recover money paid to the use of defendant.

Defendant is a producer of tobacco and in 1950 planted and harvested tobacco in excess of his allotment. As a consequence he was issued a "pink slip" marketing card which indicated that tobacco marketed by him on said card was subject to penalty to be deducted by the warehouse through which the tobacco was marketed. The penalty was ten cents per pound and the color of the card put plaintiffs on notice the penalty was due.

A representative of the Production and Marketing Administration of the U. S. Department of Agriculture is present in the office of every warehouse during the marketing season to check the marketing card, fill in the sales coupons and determine the penalty, if any, due. He enters the required information on the official coupons and also notes the amount of penalty due on the warehouse sales slip or bill of sale and then passes it to the warehouse representative who issues check to the producer for the amount of his sale less warehouse charges and the penalty noted by the PMA representative.

On 8 September defendant sold on the warehouse floor of plaintiffs 3,596 pounds of tobacco. The PMA representative estimated the tax at $35.96 rather than $359.60, the correct amount due; that is, by misplacing his decimal he figured the tax at the rate of one cent rather than ten cents per pound. He entered the amount of tax so estimated on the warehouse sales slip, tore out of the marketing card his coupon or memorandum of sale, and passed the card and sales slip to the warehouseman who issued check for the sale less the penalty noted by the PMA representative.

Thereafter, when the error was called to their attention, plaintiffs accounted for and paid to the proper Government officials the full sum which should have been deducted. They interviewed defendant with respect to the error and defendant promised to reimburse them. Later he

declined to make payment. Thereupon plaintiffs instituted this action to recover $325.64, the amount of penalty plaintiffs failed to deduct and for which they have been required to account to the U. S. Department of Agriculture.

Defendant admits the essential facts alleged and pleads voluntary payment with full knowledge of the facts. In an amended answer defendant pleads that the plaintiffs are the ones who are required to pay the penalty and that, while they may, they are not compelled to deduct same from the sales price of the tobacco, and that said plaintiffs failed to exercise their optional right to deduct the penalty at the time of the sale and may not now recover therefor.

Proper issues were submitted to the jury and were answered in favor of plaintiffs. The court entered judgment on the verdict and defendant excepted and appealed.

*Gavin, Jackson & Gavin for plaintiff appellees.*
*J. G. Edwards and Hoyle & Hoyle for defendant appellant.*

BARNHILL, J. The tobacco production program is a comprehensive plan to assure the orderly flow of tobacco into the stream of interstate and foreign commerce, and it has been approved by more than two-thirds of the tobacco producing farmers of the nation. The objective of the legislation putting the plan into operation, 7 USCA Ch. 35 B, is to eliminate the disparity between the prices of tobacco in interstate and foreign commerce and the prices of industrial products in such commerce, and to prevent the indiscriminate dumping on the national market of excessive supplies of tobacco at ruinously low prices which spell bankruptcy for the farmers, adversely affect the economy of the whole nation, disrupt the orderly marketing of tobacco, and substantially burden interstate and foreign commerce. 7 USCA sec. 1311; *Mulford v. Smith,* 307 U.S. 38, 83 L. Ed. 1092. The act is administered by the U. S. Department of Agriculture through the Production and Marketing Administration, commonly known as PMA.

Under the plan each producer of tobacco is allotted annually a tobacco acreage quota. The tobacco produced on the acreage quota thus allotted may be marketed without penalty. However, to discourage overproduction and to assure the success of the program, the marketing of any kind of tobacco in excess of the quota allotted for the farm on which the tobacco is produced is subject to a penalty of forty per centum of the average market price for such tobacco for the preceding marketing year. 7 USCA sec. 1314 (1951 pocket part).

To the end that the marketing of any excess production may be readily ascertained, every producer is furnished a marketing card which is his

authority to place his tobacco on the market for sale and to sell the same. *Adams v. Warehouse,* 230 N.C. 704, 55 S.E. 2d 331. The card must be produced and a sales memorandum made therein by a PMA representative before the sale may be consummated, without penalty, by the payment of the purchase price.

To facilitate the sale and assure the collection of any penalty due, the producer who has not planted in excess of his acreage quota is issued a white card. The farmer who has overproduced receives a pink card on which the amount per pound penalty is noted. The pink color serves to put the PMA representative and purchaser on notice that a penalty is assessable against the particular sale.

The Act provides that when tobacco is marketed through a warehouseman the "penalty shall be paid by such warehouseman . . . who may deduct an amount equivalent to the penalty from the price paid to the producer." 7 USCA sec. 1314.

The phraseology of this latter provision is the underlying cause of this litigation. The defendant contends that the penalty is assessed against the warehouseman with an option on his part to deduct the assessed penalty from the sales price of the tobacco, and that when the plaintiff failed to exercise his option to make such deduction at the time of the sale he waived his right to claim reimbursement from him.

But when the Act is considered as a whole in the light of the evils sought to be eliminated, the remedies intended to be applied, and the objective to be attained, it becomes apparent that this is not the proper construction of the provision. 50 A.J. 283, sec. 303; *Young v. Whitehall Co.,* 229 N.C. 360, 49 S.E. 2d 797; *Smith v. Davis,* 228 N.C. 172, 45 S.E. 2d 51, 174 A.L.R. 643.

Emphasis should be laid upon the necessity for appraisal of the purposes as a whole of Congress in analyzing the meaning of clauses or sections of general acts. *U. S. v. American Trucking Asso.,* 310 U.S. 534, 84 L. Ed. 1345.

The Congressional intent is to prevent the marketing of excessive amounts of tobacco. The penalty is intended as a deterrent against overproduction. It is the producer who is granted the production quota. It is he who overproduces, and the penalty is intended to penalize him for his overproduction. He markets his tobacco and the penalty is upon the marketing of tobacco produced in excess of the quota allotted. 7 USCA sec. 1314.

The intention of the lawmaking body is the heart of a statute. *Mullen v. Louisburg,* 225 N.C. 53, 33 S.E. 2d 484; *Trust Co. v. Hood, Comr. of Banks,* 206 N.C. 268, 173 S.E. 601; *Dyer v. Dyer,* 212 N.C. 620, 194 S.E. 278.

The provision that the warehouseman must pay the penalty is merely a part of the general scheme for the collection of the penalties assessed. Thus the collection is materially simplified and facilitated and the costs thereof substantially reduced. The "may" in the provision that he may deduct an amount equivalent to the amount paid must be interpreted to mean "shall." It is imperative rather than permissive in import. See *Mulford v. Smith, supra,* where the court declined to enjoin warehousemen against the deduction of penalties due by producers.

"The words 'may' and 'shall,' when used in a statute, will sometimes be read interchangeably, as will best express the legislative intent. The word 'may' will be construed to mean 'shall' where the public or third persons have a claim that the power ought to be exercised . . ." *Canal Comr. v. Sanitary District,* 56 N.E. 953. "The general rule is that the word 'may' will be construed as 'shall,' or as imposing an imperative duty whenever it is employed in a statute to delegate a power, the exercise of which is important for the protection of public or private interests. Whether merely permissive or imperative depends on the intention as disclosed by the nature of the act in connection with which the word is employed and the context." 2 Lewis' Sutherland, Stat. Const. 1153, sec. 640; *Curlee v. Bank,* 187 N.C. 119, 121 S.E. 194; *McGuire v. Lumber Co.,* 190 N.C. 806, 131 S.E. 274; *Battle v. Rocky Mount,* 156 N.C. 329, 72 S.E. 354.

The "may deduct" provision is important in that it (1) provides a means of collecting revenue due the Government, (2) protects the warehouseman who is merely a collecting agent for the Government, and (3) guarantees the payment of the penalty by the nonconforming producer so as to discourage overproduction and protect the conforming farmers. Therefore, the power to deduct the penalty "ought to be exercised" for the protection of both public and private interests. The provision will be so construed as to impose upon the warehouseman the imperative duty to deduct, in every instance, the penalty imposed.

To hold otherwise and conclude that the Congress intended to penalize the innocent warehouseman for the act of the producer in disregarding the limitation of his acreage quota would attribute to it a purpose and intent so fraught with injustice as to shock the consciences of fair-minded men. It is not the way of the courts to impute to a lawmaking agency such intent when another reasonable construction of the language used is consonant with the general purpose and intent of the Act under consideration, is in harmony with the other provisions of the statute, and serves to effectuate the objective of the legislation.

The mistake which led to the deduction of a sum less than the amount due was not the mistake of the warehouseman. It was the mistake of the PMA representative who estimated the penalty and advised the warehouseman of the amount to be deducted from the sale price. And the

mistake of the agent of the Government to which the penalty was payable cannot serve to discharge the debt due the Government.

When demand was made upon the warehouseman for the uncollected balance of the penalty due he paid the same to the use and for the benefit of the defendant, and he is entitled to recover from the defendant the amount thus paid.

In the trial below we find

No error.