**UNITED STATES of America,**
**Appellant,**

v.

**Ailcie WHITTLE and William B.**
**Hairston, Appellees.**

**No. 8208.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 10, 1961.

Decided March 27, 1961.

Kathryn H. Baldwin, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., John Strickler, U. S. Atty., Roanoke, Va., Alan S. Rosenthal and Mark R. Joelson, Attys., Dept. of Justice, Washington, D. C., on brief), for appellant.

W. R. Broaddus, Jr., Martinsville, Va. (Broaddus, Epperly & Broaddus, Mar-tinsville, Va., on brief), for appellee Ailcie G. Whittle.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and FIELD, District Judge.

FIELD, District Judge.

This appeal involves an action brought by the Government to recover penalties from the defendant-appellees under the provisions of the Agricultural Adjustment Act of 1938, as amended, 7 U.S.C. § 1281 [1] et seq., and the administrative regulations. From the stipulation filed in the Court below it appears that the tobacco acreage allotment on farm number 7413 in Pittsylvania County, Virginia, owned by the defendant, Whittle, was exceeded for both of the marketing years 1956 and 1957. The farm was operated in those years, as it had been for a number of years prior thereto, by the defendant, Hairston, as tenant of Whittle. Under the rental agreement, Whittle received one-fourth of the crops raised on the farm and paid one-fourth of the fertilizer costs as well as keeping the farm buildings in a reasonable state of repair.

The stipulation further discloses that the acreage allotment for each year was issued to Hairston as farm operator, and that Whittle had no knowledge of the issuance of such allotments nor did she have any knowledge of the overplanting. Hairston marketed the tobacco under a within-quota card and the warehouseman failed to deduct the penalty through what the parties and the Court below termed "inadvertence." The Government brought this action against the defendants, charging that they are jointly and severally liable for the penalty as producers under the Act and regulations. The Court below concluded that defendants were producers only to the extent of their respective interests in the crops, apportioned the total penalty as between them, and rendered judgment against Hairston for three-fourths of the total and against Mrs. Whittle for one-fourth of the penalty. From this action of the

1. 7 U.S.C.A. § 1281 et seq.

District Court, the Government has appealed.

The statute[2] on which this action was based subjects any tobacco marketed in excess of the marketing quota to a penalty of seventy-five per centum of the average market price. It further provides that such penalty shall be paid by the person acquiring such tobacco from the producer, extending to the buyer, however, the right to deduct an equivalent amount from the price paid to the producer. It contains a similar provision for payment of the penalty by a warehouseman or agent if the tobacco is marketed in such manner, and in such event, gives the warehouseman or agent the right of deducting the equivalent amount from the producer's price. This section of the statute further states that if a producer falsely identifies or fails to account for the disposition of any tobacco "the penalty in respect thereof shall be paid and remitted by the producer." However, counsel for the Government concede that recovery is not sought under this latter provision, but is based on what they conceive to be the plain import of the general penalty provisions above referred to and the appropriate regulations.

■■ While the statute requires the buyer, agent or warehouseman to pay the penalty, it is clear that the imposition of the penalty is on the offending producer. We agree with the language of the Court in Puckett v. Sellars, 235 N.C. 264, 69 S.E.2d 497, at page 499:

"The Congressional intent is to prevent the marketing of excessive amounts of tobacco. The penalty is intended as a deterrent against overproduction. It is the producer who is granted the production quota. It is he who overproduces, and the penalty is intended to penalize him for his overproduction. He markets his tobacco and the penalty is upon the

marketing of tobacco produced in excess of the quota allotted."

In that case the plaintiff warehouseman had paid the penalty to the Government but through a clerical error had failed to deduct the full amount from the defendant producer's price. Construing the statute as stated above, the Court quite properly upheld the plaintiff's right to recover the amount paid "to the use and for the benefit of the defendant."

■■ Here, the warehouseman inadvertently failed to deduct the penalty, and the Government, instead of seeking recovery from him, has proceeded directly against the defendants as producers. We think such action is entirely compatible with the statute, and avoids an unnecessary circuity in the collection of the penalty thereby imposed. Counsel for defendants contends that the parties were in the position of landlord and tenant and that this relationship should be determinative of the issue here. In our view, whether the relationship was landlord and tenant or owner and sharecropper is immaterial for in either event both of the defendants come within the definition of "producer" under the Marketing Quota Regulations for the years involved.[3]

It does not necessarily follow, however, that we should accept the Government's contention that each of the defendants is jointly and severally liable for the entire penalty. In their briefs counsel referred to the case of Usher v. United States, 4 Cir., 146 F.2d 369, which involved the statutory sections and regulations relative to cotton production. In regard to cotton, the Act subjects the producer to a penalty of 50% of the parity price in the event of excess marketing and effects a lien on the entire crop produced on the subject farm.[4] The regulations specifically state, "Each producer having an interest in the * * * crop of cotton on any farm for which a farm marketing

2. 7 U.S.C. § 1314(a); 7 U.S.C.A. § 1314 (a).

3. 7 C.F.R. (1956) § 725.731(q); 7 C.F.R. (1957) § 725.831(q).

4. 7 U.S.C.A. § 1346.

excess has been determined shall be liable to pay the entire amount of the penalty on the farm marketing excess."[5] The regulations contain provisions for credits of payments made by other producers or buyers and also set up a procedure for the apportionment of the penalty in cases where there is a separate marketing by the several producers of a crop. The regulations further provide that any person acquiring such cotton from a producer takes it subject to the statutory lien and is liable for the penalty thereon.[6]

For the purpose of further comparison, we examined the statutory provisions and regulations in regard to peanuts, another farm product covered by the Act. Here too, the statute imposes a penalty for excess marketing, the penalty rate being 75% of the support price for the marketing year involved.[7] The statute is somewhat similar to that affecting tobacco in that it requires the penalty to be paid by the person who buys or otherwise acquires the peanuts from the producer, or in the event they are marketed through an agent, the penalty is to be paid by such agent. It also extends to the buyer or agent the right to deduct the penalty from the price paid to the offending producer. However, this particular penalty statute includes the following language: "If the person required to collect the penalty fails to collect such penalty, such person and all persons entitled to share in the peanuts marketed from the farm or the proceeds thereof shall be jointly and severally liable for the amount of the penalty." The companion regulation specifically provides that in the event the buyer fails to collect or pay the penalty, he and all of the producers on the offending farm shall be jointly and severally liable for the amount of the penalty.[8]

This specific language of joint and several liability contained in the statutes and regulations with respect to cotton and peanuts, and the complete absence thereof in those dealing with tobacco is of more than passing significance. The Agricultural Adjustment Act was designed to regulate a complex and sensitive segment of our national economy. Undoubtedly, Congress took into consideration the variance in the production and marketing procedures of the several commodities subject to the statutory program. It is also a reasonable assumption that the Secretary of Agriculture, in the exercise of his regulatory authority, was aware of the differences in production and marketing practices that necessarily exist among the various crop classifications subject to statutory control. The Secretary is vested with broad regulatory power,[9] and an examination of the regulations indicates that he has exercised that power with considerable specificity. Under the circumstances, we are of the opinion that it would be inappropriate for us to supplement these regulations by indulging in the implication contended for by the Government in this case.

The Government contends, however, that since the defendants' liability for the penalty is founded in tort, they are subject to the resultant joint and several liability of joint tortfeasors. This argument might be more persuasive if there were evidence of affirmative participation by the defendant Whittle in this case. However, it was conceded by the Government that Mrs. Whittle had no knowledge of either the allotment or the acreage planted on the farm and that she neither authorized, permitted nor condoned the planting of the excess acreage. Her liability is based solely on her status as a "producer" under the regulations. Under these circumstances, we see no reason to subject her to a greater liability in this action than that which she would

5. 7 C.F.R. (1956) § 722.669; 7 C.F.R. (1957) § 722.769.

6. 7 C.F.R. (1956) § 722.670; 7 C.F.R. (1957) § 722.770.

7. 7 U.S.C.A. § 1359.

8. 7 C.F.R. (1956) § 729.656; 7 C.F.R. (1957) § 729.756.

9. 7 U.S.C.A. § 1375(b).

have incurred had the penalty been collected through the procedure specifically designated in the statute and regulations. Accordingly, the judgment below is

Affirmed.