JOHN L. BUFORD AND BETTY TATE BUFORD v. GENERAL MOTORS CORPORATION

No. 526PA93

(Filed 30 December 1994)

**1. Automobiles and Other Vehicles § 254 (NCI4th)— sale of new car—New Motor Vehicle Warranties Act—reasonable conduct by dealer**

The trial court correctly granted a directed verdict in defendant's favor on the issue of whether defendant unreasonably failed or refused to comply with the New Motor Vehicles Warranties Act (the Lemon Law) where defendant first learned of plaintiffs' complaints through their attorney's letter of 20 February 1990, one year after plaintiffs bought their vehicle; defendant responded to

**BUFORD v. GENERAL MOTORS CORP.**

[339 N.C. 396 (1994)]

that letter by mail on 1 March 1990, only nine days later; it performed two independent inspections, one as a result of the communication with the attorney and another after plaintiffs filed their suit; defendant performed the minor repairs and adjustments necessary during the first inspection, all free of charge; defendant's division manager found no defects that substantially impaired the value of the Suburban during his inspection and test drive, but testified that he would have corrected any defects he found; despite these findings, defendant offered to settle the lawsuit and avoid publicity by paying the damages allowed under the Lemon Law in exchange for possession of, and title to, the vehicle; and plaintiffs refused. The only suggestion of unreasonableness is plaintiffs' allegation that defendant should have offered them a replacement or refund but never did; this is not legally sufficient, even when taken as true, to send the issue to the jury.

**Am Jur 2d, Automobiles and Highway Traffic §§ 721 et seq.**

**Validity, construction, and effect of state motor vehicle warranty legislation (Lemon Law). 51 ALR4th 872.**

2. **Automobiles and Other Vehicles § 259 (NCI4th)— new vehicle—Lemon Law action—attorney fees**

The trial court did not abuse its discretion by denying plaintiffs' motion for attorney fees in an action under the New Motor Vehicles Warranties Act arising from the purchase of a Suburban where defendant responded to both plaintiff-husband and his attorney within two weeks of the attorney's letter to defendant; it arranged to have the Suburban inspected, conducted the inspection over a four-day period, and repaired all defects found during that inspection free of charge; it supplied a rental car for plaintiffs' use during those four days, also free of charge; a second inspection occurred after plaintiffs filed their lawsuit, during which the vehicle was test driven and visually examined; in December 1991 defendant offered to accept return of the Suburban and pay plaintiffs their refund under the Lemon Law; defendant thus acted altogether reasonably from the time it learned of plaintiffs' complaints about their vehicle; and no evidence tends to show an unreasonable refusal or failure to resolve the matter. N.C.G.S. § 20-351.8(3) places an award of attorney's fees within the discretion of the trial court and both reason and the evidence here supported the denial of the motion.

BUFORD v. GENERAL MOTORS CORP.

[339 N.C. 396 (1994)]

**Am Jur 2d, Automobiles and Highway Traffic §§ 721 et seq.**

**Validity, construction, and effect of state motor vehicle warranty legislation (lemon law). 51 ALR4th 872.**

**3. Automobiles and Other Warranties § 259 (NCI4th)— purchase of new Suburban—Lemon Law—recovery conditioned on return of vehicle**

The trial court did not err in a Lemon Law action arising from the purchase of a Suburban by conditioning recovery of damages on return of the vehicle. A consumer may not retain a vehicle for which he has received a refund under the Lemon Law whether the refund arises out of a request by the consumer pursuant to N.C.G.S. § 20-351.3(a) or out of a judgment for monetary damages. The last sentence of N.C.G.S. § 20-351.8(2) requires a jury to refer to the factors listed in N.C.G.S. § 20-351.3(a) in determining the amount of its award for monetary damages which, as provided in N.C.G.S. § 20-351.3(a), must provide for the return of the defective vehicle to the manufacturer.

**Am Jur 2d, Automobiles and Highway Traffic §§ 721 et seq.**

**Validity, construction, and effect of state motor vehicle warranty legislation (lemon law). 51 ALR4th 872.**

**4. Judgments § 38 (NCI4th)— purchase of new vehicle— Lemon Law—supplemental judgment after session—no error**

The trial court did not err in a Lemon Law action arising from the purchase of a Suburban by entering a supplemental judgment outside the session during which the case was heard without the consent of the parties. The trial court had authority under N.C.G.S. § 7A-47.1 to enter the judgment outside the session because defendant's motion for a supplemental judgment did not require a jury; under N.C.G.S. § 1A-1, Rule 6(c), expiration of the 30 March 1992 session of Superior Court had no impact on the trial court's jurisdiction to enter a supplemental judgment on 11 May 1992; and the trial court had authority, under *Housing, Inc. v. Weaver*, 305 N.C. 428, to enter its supplemental judgment because defendant moved to amend the judgment on 13 April 1992, within the ten-day window provided by N.C.G.S. § 1A-1, Rule 59(e). Rule 59 requires that a motion for a new trial or to

**BUFORD v. GENERAL MOTORS CORP.**

[339 N.C. 396 (1994)]

amend a judgment be made within ten days of the judgment, but does not prescribe the time for judicial action on the motion.

**Am Jur 2d, Judgments § 81.**

Justice WEBB did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 112 N.C. App. 437, 435 S.E.2d 782 (1993), vacating in part a judgment entered 6 April 1992 and vacating an order and supplemental judgment entered 11 May 1992, by Martin (Lester P., Jr.), J., in Superior Court, Forsyth County, and remanding for a partial new trial. Heard in the Supreme Court 13 September 1994.

*Moore and Brown, by B. Ervin Brown, II, David B. Puryear, Jr., and R. J. Lingle, for plaintiff-appellants.*

*Petree Stockton, L.L.P., by Richard J. Keshian and Julia C. Archer, for defendant-appellee.*

WHICHARD, Justice.

This case arises out of plaintiffs' purchase of a 1989 Chevrolet Suburban and requires us to interpret North Carolina's New Motor Vehicles Warranties Act (hereinafter the "Lemon Law"), N.C.G.S. §§ 20-351 through -351.10 (1993), for the first time. Plaintiffs bought their vehicle from Parks Chevrolet, Inc., an authorized dealer of General Motors automobiles, on 24 February 1989. They paid $23,066.00, $16,000.00 of which they financed. They were current on their finance payments of $357.59 per month. The General Motors warranty applicable to the Suburban covers the entire vehicle for up to three years or 50,000 miles, whichever comes first. Warranted repairs are free during the first year or up to 12,000 miles. After that point the consumer pays a $100 deductible fee per repair until the warranty expires. Plaintiffs put 12,000 miles on their vehicle within three months of their purchase. Plaintiff-husband uses it to haul heavy machinery to job sites from which he removes hazardous wastes such as lead and asbestos.

Plaintiff-husband testified that he first noticed problems with his new vehicle as he drove it home from Parks Chevrolet the day he bought it. He found the vehicle difficult to start and heard the doors and windows rattling. The first time it rained, he noticed that the tail-

gate leaked. Additionally, the defroster blew air in the wrong direction, and the windshield wipers sprayed water onto the hood instead of the windshield.

Plaintiffs returned their vehicle to Parks Chevrolet for its first repairs on 2 March 1989, one week after their purchase. Over the course of the next three years, plaintiffs returned the vehicle to Parks Chevrolet—or, after they moved to Pennsylvania, to Day Chevrolet in Pittsburgh—for repairs on at least thirty-one different occasions. Because of the numerous repair attempts, plaintiffs' Suburban was out of commission for more than forty days during the first year of ownership.

The primary problems plaintiffs reported included continuous shaking and vibration of the doors, windows, and body panels, excessive brake wear, wind passing through the doors and windows, and dashboard vents blowing air the wrong way. The vents and windshield washers had been repaired by the time of trial, while the fit of the doors and windows had not been corrected to plaintiffs' satisfaction despite several attempts. At the time of trial, plaintiffs had replaced the brakes five times in the 88,000 miles they had driven the vehicle. Plaintiffs also experienced problems with items not covered under the General Motors warranty, such as the spoiler on the hood and the wiring on the running board, both of which Parks Chevrolet installed.

After approaching Parks Chevrolet's service manager about the problems, plaintiff-husband met with the owner, Richard C. Parks, in March or April 1989. Plaintiff-husband testified that Parks offered him four options: live with the problems; trade in the vehicle and take the loss; go to arbitration; or go to court. He also testified that Parks told him that "quality· is lacking in those Suburbans." Plaintiff-husband declined to utilize General Motors' arbitration system after learning from Parks and the Better Business Bureau in Pittsburgh that consumers receive little satisfaction from that procedure. He further testified that Parks did not offer to replace the Suburban or to refund plaintiffs' money.

Plaintiffs contacted an attorney, J. Bruce Mulligan, who wrote to Parks Chevrolet on 10 November 1989, restating plaintiffs' complaints and stating that the vehicle fell within the Lemon Law. The letter noted three specific defects that both Parks Chevrolet and Day Chevrolet had been unable to repair:

(1) the heating and air conditioning controls and vent system; (2) the fitting of the doors, particularly the driver's door and numerous vibrations in the body, which is ill-fitting; (3) a continuous grinding noise in the rear end which has resulted in two complete brake replacements in less than 30,000 miles for the vehicle.

Neither this letter nor Mulligan's phone calls to Chevrolet's Customer Assistance Division and General Motors Corporation generated a response. On 20 February 1990 Mulligan wrote to both the Customer Assistance Division and General Motors stating plaintiffs' intent to file suit under the Lemon Law if the matter was not resolved.

On 1 March 1990 John Lyles, the Division Manager at the Charlotte branch of Chevrolet Motor Division, replied to Mulligan, informing him that personnel in the Pittsburgh branch would handle the matter because plaintiffs lived in Pennsylvania at that time. Additionally, Lyles called plaintiff-husband around 9 March 1990. He offered, on behalf of Chevrolet Motor Division, to have plaintiffs' Suburban inspected at Day Chevrolet by a General Motors representative. He also offered the use of a rental car free of charge during the inspection. He testified that plaintiff-husband refused to allow any inspection and hung up on him. Mulligan eventually wrote to George Evanich, the Division Manager at the Pittsburgh branch of Chevrolet Motor Division, and reported that plaintiff-wife had made an appointment in April to have the Suburban inspected.

On 23 April 1990 Art Matlack, a Chevrolet Technical Analysis Expert, inspected plaintiffs' Suburban. At that time plaintiffs had driven the vehicle about 50,000 miles. Matlack performed minor repairs and adjustments, such as replacing bearings, aligning the hood, and adjusting mirrors. Some conditions plaintiffs complained of—for example, wind entering the vehicle around the door frame on the driver's side—did not occur during his testing and inspection. He completed all repairs at no charge to plaintiffs. Evanich sent the results of the inspection to Mulligan on 3 May 1990, and explained in his letter that "the vehicle returned to [plaintiff-husband] on April 27, 1990, was in the opinion of Chevrolet Motor Division free of all defects which would affect the operation, safety, or merchantability of this vehicle." General Motors did not offer to replace the vehicle or refund plaintiffs' money.

Plaintiffs filed suit in Superior Court, Forsyth County, on 13 March 1991, alleging that General Motors had unreasonably refused to comply with the Lemon Law by failing to either refund their pur-

chase price or replace the defective vehicle as required under the Act, and was therefore liable to plaintiffs for monetary damages. One month after the filing, Lyles himself performed a second inspection of the plaintiffs' Suburban. He tried to examine all seventeen problems listed by plaintiffs through discovery. However, plaintiff-husband cut Lyles' inspection short, indicating that he could wait no longer for Lyles to finish.

As of the date of Lyles' inspection, only two of the primary problems alleged by plaintiffs remained—the fit and finish of the body and premature brake wear. Plaintiffs concede that defendant had repaired the heating and ventilation system to their satisfaction. Lyles examined the three aspects of the vehicle's fit and finish that plaintiffs complained of: a misaligned hood; rattling windows; and an ill-fitting door on the driver's side. He found that a spoiler on the hood, not installed by General Motors, affected the hood's alignment, making it difficult to close and causing some vibration. That condition, however, did not fall within the coverage of the General Motors warranty because the company neither manufactured nor installed the spoiler.

During his test drive, Lyles listened for a rattling noise from the windows on the driver's side. He heard no such noise, but did testify that he was unclear about the nature of the alleged noise because plaintiff-husband refused to communicate about his complaints. Finally, Lyles examined the vehicle's body in search of defects in the alignment of the door on the driver's side. After taking photographs from several different angles, he performed two standard tests during his test drive to determine the point at which air might enter the vehicle. First, he lit a cigarette and traced the door frame. When doors are misaligned or otherwise ill-fitting, cigarette smoke will be drawn out of a vehicle while the smoker is driving. Next he put his hand around the frame in an effort to feel air entering the passenger cabin. Lyles discovered no air coming in around the door frame as a result of either test. He concluded from his inspection that any problems with the Suburban's fit and finish were minor imperfections to be expected on vehicles. He testified that eight out of ten 1989 Suburbans would have similar imperfections. He found no defects that could substantially impair the value of plaintiffs' vehicle.

As to brake wear, Lyles testified that the General Motors warranty does not cover that condition because it depends on the owners' care and use of the vehicle. He further testified that hauling heavy loads causes brakes to wear out more quickly than normal because a

BUFORD v. GENERAL MOTORS CORP.

[339 N.C. 396 (1994)]

vehicle's stopping distance and the pressure needed on the brakes increase with the weight of the vehicle. Given the use plaintiff-husband made of his Suburban, Lyles did not seem surprised that the brakes wore out fairly quickly.

The case was tried to a jury during the 30 March 1992 session of Superior Court, Forsyth County. At the close of all the evidence, defendant moved for, and the trial court granted, a directed verdict in favor of defendant on the issue of whether it had unreasonably refused to comply with the Lemon Law. The court submitted two issues to the jury: whether plaintiffs' Suburban contained uncorrected defects that substantially impaired its value; and if so, what amount of damages plaintiffs should receive from defendant. The jury answered the first question in the affirmative and returned a verdict for plaintiffs in the amount of $20,766.00. The trial court entered judgment on 6 April 1992 for that amount, but conditioned plaintiffs' receipt of their damages on the return of the Suburban to General Motors. The trial court denied plaintiffs' motion for attorney's fees filed pursuant to N.C.G.S. § 20-351.8(3). On 4 May 1992 plaintiffs filed notice of appeal from the portion of the judgment that required return of the vehicle and from the denial of their motion for attorney's fees.

Defendant filed a Motion to Amend Judgment on 13 April 1992, requesting the trial court to add the following sentence to its judgment: "In the event plaintiffs fail to return the vehicle and proper title within thirty (30) days of the judgment, the judgment shall be offset by the fair market value of a 1989 Chevrolet Suburban as of April 6, 1992." The trial court granted defendant's motion and entered a supplemental judgment on 11 May 1992, ordering that the damages awarded to plaintiffs be offset by the difference between the book value of a 1989 Suburban as of 6 April 1992 and as of the date on which plaintiffs tendered the vehicle and proper title to General Motors. Plaintiffs filed notice of appeal from the supplemental judgment on 14 May 1992.

The Court of Appeals reversed the trial court's directed verdict on the issue of defendant's unreasonable noncompliance and ordered a partial new trial, holding that whether General Motors unreasonably failed to comply with the Lemon Law is a question for the jury, not the trial court. It also vacated the trial court's judgment to the extent it conditioned recovery of damages on the return of the vehicle to General Motors. Finally, the court vacated the supplemental judgment on the grounds that the trial court lacked jurisdiction to enter it.

BUFORD v. GENERAL MOTORS CORP.

[339 N.C. 396 (1994)]

On 27 January 1994 this Court allowed defendant's petition for discretionary review. For reasons that follow, we now reverse the Court of Appeals.

**[1]** Defendant first contends the Court of Appeals erred when it reversed the trial court's directed verdict in defendant's favor on the issue of whether defendant acted unreasonably so as to warrant treble damages under the statute. At trial the court refused to submit to the jury the issue of whether General Motors unreasonably refused to comply with the Lemon Law during its course of dealing with plaintiffs. The Court of Appeals reversed the trial court, holding that whether a manufacturer unreasonably refused to comply with the law is a question for the jury when substantial evidence exists to support the contention. Additionally, the Court of Appeals remanded the case for a new trial solely on this issue. Defendant now argues that the trial court correctly directed a verdict in its favor. We agree, and accordingly reverse the Court of Appeals on this issue.

The portion of the Lemon Law that provides for treble damages states:

> In any action brought under this Article, the court may grant as relief:
>
> . . .
>
> (2) Monetary damages to the injured consumer in the amount fixed by the verdict. Such damages shall be trebled upon a finding that the manufacturer unreasonably refused to comply with G.S. 20-351.2 or G.S. 20-351.3.

N.C.G.S. § 20-351.8(2) (1993). During the charge conference, the trial court stated, "I haven't heard any evidence from anybody that shows that the defendant . . . in any way . . . unreasonably refused to comply. Looks like they [did] everything in the world they could do; continued to make repairs, [did] repairs outside the warranty." For those reasons, the court refused to submit to the jury the issue of whether General Motors acted unreasonably, and granted defendant's motion for a directed verdict.

A directed verdict is improper if the evidence, viewed in a light most favorable to the non-moving party, is legally sufficient to send the issue to the jury. *Taylor v. Walker*, 320 N.C. 729, 733-34, 360 S.E.2d

796, 799 (1987); *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 369, 329 S.E.2d 333, 337-38 (1985). It is proper when, as a matter of law, plaintiffs cannot recover upon any view of the facts established by the evidence. *Taylor*, 320 N.C. at 734, 360 S.E.2d at 799. Though the party who moves for a directed verdict bears a heavy burden, *id.*, we conclude that defendant met this burden here.

Defendant first learned of plaintiffs' complaints through Mulligan's letter of 20 February 1990, one year after plaintiffs bought their vehicle. It responded to that letter by mail on 1 March 1990, only nine days later. It performed two independent inspections, one as a result of the communication with Mulligan and another after plaintiffs filed their suit. Defendant performed the minor repairs and adjustments necessary during the first inspection, all free of charge. Lyles found no defects that substantially impaired the value of the Suburban during his inspection and test drive, but testified that he would have corrected any defects he found. Despite these findings, defendant offered to settle the lawsuit and avoid publicity by paying the damages allowed under the Lemon Law in exchange for possession of, and title to, the vehicle. Plaintiffs refused.

All the evidence thus leads to the conclusion that defendant acted reasonably and in good faith throughout its course of dealing with plaintiffs. The only suggestion of unreasonableness is plaintiffs' allegation that defendant should have, but never did, offer them a replacement or refund. This is not legally sufficient, even when taken as true, to send the issue to the jury. Defendant cooperated with plaintiffs and addressed their concerns in a prompt and honest manner as soon as it was notified of their dissatisfaction. Defendant reasonably concluded, as a result of two inspections and several tests, that the condition of plaintiffs' vehicle did not warrant paying them a full refund or supplying them with a replacement vehicle. The trial court thus correctly directed a verdict in defendant's favor on the issue of whether defendant unreasonably failed or refused to comply with the Lemon Law, and the Court of Appeals erred when it reversed the directed verdict and ordered a new trial on this issue.

[2] Defendant next argues that the Court of Appeals erred by holding that the trial court abused its discretion when it denied plaintiffs' motion for attorney's fees. We agree, and accordingly reverse the Court of Appeals on this issue.

Attorney's fees are available as a remedy under N.C.G.S. § 20-351.8(3), which provides:

**BUFORD v. GENERAL MOTORS CORP.**

[339 N.C. 396 (1994)]

In any action brought under this Article, the court may grant as relief:

. . .

(3) A reasonable attorney's fee for the attorney of the pre-vailing party, payable by the losing party, upon a finding by the court that:

a. The manufacturer unreasonably failed or refused to fully resolve the matter which constitutes the basis of such action; . . . .

The trial court denied plaintiffs' motion for an award of attorney's fees pursuant to this provision as well as plaintiffs' Motion to Amend Judgment, filed in part on the grounds that the court failed to award a reasonable attorney's fee. The Court of Appeals ordered the trial court to "consider plaintiffs' entitlement to attorney's fees in light of the jury's verdict [on remand] on the issue of whether General Motors unreasonably refused to comply with the Warranty Act." We hold that this order was erroneous.

The statute places an award of attorney's fees within the discre-tion of the trial court. We will not second-guess a trial court's exercise of its discretion absent evidence of abuse. An abuse of discretion occurs only when a court makes a patently arbitrary decision, mani-festly unsupported by reason. *State v. Locklear*, 331 N.C. 239, 248-49, 415 S.E.2d 726, 732 (1992); *Little v. Penn Ventilator Co.*, 317 N.C. 206, 218, 345 S.E.2d 204, 212 (1986). In reviewing the trial court's denial of plaintiffs' motion for attorney's fees, we must determine whether it could "have been the result of a reasoned decision." *State v. Wilson*, 313 N.C. 516, 538, 330 S.E.2d 450, 465 (1985). We conclude that the trial court exercised its discretion in a rational and reasonable man-ner. Both reason and the evidence supported denial of the motion.

As noted above, defendant responded to both plaintiff-husband and his attorney within two weeks of the attorney's letter to defend-ant. It arranged to have the Suburban inspected, conducted the inspection over a four-day period, and repaired all defects found during that inspection free of charge. It supplied a rental car for plain-tiffs' use during those four days, also free of charge. A second inspec-tion occurred after plaintiffs filed their lawsuit, during which the vehicle was test driven and visually examined. Finally, in December 1991 defendant offered to accept return of the Suburban and pay plaintiffs their refund under the Lemon Law. Defendant thus acted

altogether reasonably from the time it learned of plaintiffs' complaints about their vehicle. No evidence tends to show an unreasonable refusal or failure to resolve the matter. The trial court thus did not abuse its discretion when it denied plaintiffs' motion for attorney's fees under N.C.G.S. § 20-351.8(3).

[3] Defendant also contends the Court of Appeals erred by vacating the portion of the trial court's judgment which conditioned plaintiffs' recovery of damages on their return of the vehicle to defendant. It argues that the Court of Appeals' ruling confers a double recovery and a windfall on the plaintiffs. We agree, and accordingly reverse the Court of Appeals on this issue.

A consumer who buys a new motor vehicle may exercise either of two options when that vehicle contains defects that the manufacturer cannot repair or correct: request a comparable new vehicle or request a refund of the contract price, finance charges, collateral charges, and incidental and consequential damages. N.C.G.S. § 20-351.3(a). If the consumer chooses a refund, he must return the vehicle to the manufacturer. *Id.* The manufacturer is entitled to a reasonable allowance for the consumer's use of the vehicle if the consumer chooses a refund. *Id.* § 20-351.3(c).

Plaintiffs argue that the recovery of damages pursuant to a jury verdict, unlike a manufacturer's refund, does not require the return of the vehicle. We disagree, and hold that when a consumer receives a refund under the Lemon Law, whether by request pursuant to section 20-351.3(a) or through judicial action, the consumer may not retain the defective vehicle. This result is consistent with the language of the Act, *see id.* § 20-351.3(a), and best achieves its purposes.

Plaintiffs rely on N.C.G.S. § 20-351.8 in support of their position. They contend they are entitled to keep their Suburban as well as the $20,766 in damages because this provision does not expressly condition the recovery of monetary damages on return of the defective vehicle. Section 20-351.8 provides, in pertinent part:

In any action brought under this Article, the court may grant as relief:

(1) A permanent or temporary injunction or other equitable relief as the court deems just;

(2) Monetary damages to the injured consumer in the amount fixed by the verdict. Such damages shall be trebled upon a

finding that the manufacturer unreasonably refused to comply with G.S. 20-351.2 or G.S. 20-351.3. The jury may consider as damages all items listed for refund under G.S. 20-351.3 . . . .

The relevant portion of section 20-351.3 states:

(a) When the consumer is a purchaser . . ., if the manufacturer is unable, after a reasonable number of attempts, to conform the motor vehicle to any express warranty by repairing or correcting . . . any defect or condition or series of defects or conditions which substantially impair the value of the motor vehicle to the consumer, . . . the manufacturer shall, at the option of the consumer, replace the vehicle with a comparable new motor vehicle or accept return of the vehicle from the consumer and refund to the consumer the following:

(1) The full contract price including, but not limited to, charges for undercoating, dealer preparation and transportation, and installed options, plus the non-refundable portions of extended warranties and service contracts;

(2) All collateral charges, including but not limited to, sales tax, license and registration fees, and similar government charges;

(3) All finance charges incurred by the consumer after he first reports the nonconformity to the manufacturer, its agent, or its authorized dealer; and

(4) Any incidental damages and monetary consequential damages.

The remedies provision, section 20-351.8, by referring directly to section 20-351.3, fully incorporates the amount and type of relief available at the consumer's option into a jury's calculation of monetary damages. Plaintiffs attempt to avoid such incorporation by arguing that the directions to the jury in the last sentence of N.C.G.S. § 20-351.8(2) are only permissive, and therefore do not *mandate* return of the vehicle. We disagree. That subsection is ambiguous to the extent it does not expressly address the subject of retention of the vehicle. Therefore, we must use rules of statutory construction to resolve the ambiguity. *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136-37 (1990) ("[W]here a statute is ambiguous, judicial construction must be used to ascertain the legislative will."); *N.C. Baptist Hospitals, Inc. v. Mitchell*, 323 N.C. 528, 532, 374 S.E.2d 844, 846 (1988) (same principle).

We begin this process by determining the intent underlying the legislation. *Black v. Littlejohn*, 312 N.C. 626, 630, 325 S.E.2d 469, 473 (1985); *In re Kapoor*, 303 N.C. 102, 106, 277 S.E.2d 403, 407 (1981); *In re Hardy*, 294 N.C. 90, 95, 240 S.E.2d 367, 371 (1978) (The "primary rule of construction [is] that the intent of the Legislature controls."). We determine that intent not only from the express language used, "but also from the [provision's] nature and purpose, and the consequences which would follow its construction one way or another." *Art Society v. Bridges, State Auditor*, 235 N.C. 125, 130, 69 S.E.2d 1, 5 (1952).

The Lemon Law has several purposes. It protects consumers who purchase defective new vehicles. It also encourages private settlement between such consumers and manufacturers, as revealed by section 20-351.3(a). The reference in section 20-351.8(2) to section 20-351.3(a) discloses a legislative intent to treat jury verdicts as refunds. Finally, the Act seeks a fair result that neither unduly benefits nor unduly burdens either party to a dispute.

Having determined the legislative intent, we must avoid a "construction . . . which operates to defeat or impair the object of the statute" if we can do so consistently with the statutory language itself. *N.C. Baptist Hospitals*, 323 N.C. at 532, 374 S.E.2d at 846; *see also In re Hardy*, 294 N.C. at 96, 240 S.E. 2d at 371. We will eschew a strictly literal construction of a statute that will contravene or impair the goals of the legislation if we can reasonably avoid such a construction without distorting the language. *N.C. Baptist Hospitals*, 323 N.C. at 533, 374 S.E.2d at 847; *In re Banks*, 295 N.C. 236, 240, 244 S.E.2d 386, 389 (1978); *In re Hardy*, 294 N.C. at 95, 240 S.E.2d at 371. Finally, "[w]hether a particular provision in a statute is to be regarded as mandatory or directory depends more upon the purpose of the statute than upon the particular language used." *Bridges*, 235 N.C. at 130, 69 S.E.2d at 5 (1952); *see also Puckett v. Sellars*, 235 N.C. 264, 268, 69 S.E.2d 497, 500 (1952) (" 'Whether [the word "may" is] merely permissive or imperative depends on the intention as disclosed by the nature of the act in connection with which the word is employed and the context.' " (quoting 2 Lewis' Sutherland, Stat. Const. 1153 § 640)).

Mindful of both the purposes of the statute and these rules of construction, we hold that a consumer may not retain a vehicle for which he has received a refund under the Lemon Law. This rule applies whether the refund arises out of a request by the consumer pursuant to section 20-351.3(a) or out of a judgment for monetary damages. We

further hold that the last sentence of N.C.G.S. § 20-351.8(2) requires a jury to refer to the factors listed in § 20-351.3(a) in determining the amount of its award for monetary damages which, as provided in § 20-351.3(a), must provide for the return of the defective vehicle to the manufacturer.

Our conclusions comport with the nature and purpose of the Lemon Law and avoid the undesirable consequences of alternative interpretations. To allow a jury to award both monetary damages and ownership of the vehicle to victorious plaintiffs because of purportedly permissive language in section 20-351.8(2) would impair the goals of the legislation. For example, it would overcompensate successful consumers to the detriment of the manufacturer, and almost certainly to the detriment of other consumers to whom the manufacturer would likely pass the additional expense. Plaintiffs' interpretation of the statute would allow a consumer to receive treble damages and attorney's fees as well as continued ownership of the defective vehicle. Such a recovery would represent an unintended windfall to the consumer, which contravenes the notion that the statute seeks to protect the interests of both consumers *and* manufacturers. Additionally, such double recovery would create a disincentive to negotiate a private settlement. Consumers who realize they may keep their vehicle and receive a refund if they sue the manufacturer, but not if they resolve the issue without judicial action, would decline to pursue private negotiations with the manufacturer. This would defeat a major purpose of the Lemon Law, the resolution of disputes over defective vehicles without court action. We should avoid such an undesirable result when possible. "If an act is susceptible to more than one construction, the consequences of each are a potent factor in its interpretation, and undesirable consequences will be avoided if possible." *Little v. Stevens*, 267 N.C. 328, 336, 148 S.E.2d 201, 206 (1966), *quoted in Utilities Commission v. Duke Power Co.*, 305 N.C. 1, 15, 287 S.E.2d 786, 794-95 (1982); *see also Commissioner of Insurance v. Automobile Rate Office*, 294 N.C. 60, 68, 241 S.E.2d 324, 329 (1978) ("In construing statutes courts normally adopt an interpretation which will avoid absurd or bizarre consequences, the presumption being that the legislature acted in accordance with reason and common sense and did not intend untoward results."); *Puckett*, 235 N.C. at 268, 69 S.E.2d at 500 (Courts will not impute a legislative intent "fraught with injustice" when a different construction of the language used "serves to effectuate the objective of the legislation.").

Our conclusions, informed by the policies underlying the Lemon Law, are consistent with both the language and the purpose of the statute.

We would reach the same result even without exercising our power of statutory construction. Section 20-351.8(1) provides that a court may grant "equitable relief as the court deems just" in addition to the monetary damages and attorney's fees available to successful plaintiffs. The return of a defective vehicle in exchange for an award of money damages qualifies as equitable relief. Thus the portion of the trial court's judgment requiring plaintiffs to return the Suburban fell squarely within the broad discretion granted trial courts by the statute. We cannot say, given the facts of the case, that the trial court abused its discretion.

The trial court's judgment, which conditioned plaintiffs' receipt of damages on their return of the Suburban, was thus correct under our interpretation of the statute. It protected plaintiffs' interests without awarding them an undeserved windfall or double recovery. Therefore, the Court of Appeals erred when it vacated the judgment.

[4] Defendant further contends the Court of Appeals erred by vacating the trial court's supplemental judgment entered on 11 May 1992. In that judgment the trial court ordered that plaintiffs' award of damages "shall be off-set by the difference between the book value of a 1989 Chevrolet Suburban as of April 6, 1992 and the book value of a 1989 Chevrolet Suburban as of the date on which the vehicle and proper title are tendered to defendant pursuant to the judgment [of 6 April 1992]." The Court of Appeals vacated this judgment because it was entered outside the session during which the case was heard, without the consent of the parties. The defendant contends this was error. We agree, and accordingly reverse the Court of Appeals on this issue.

A superior court generally must enter its judgment "during the term, during the session, in the county and in the judicial district where the hearing was held." *State v. Boone*, 310 N.C. 284, 287, 311 S.E.2d 552, 555 (1984). However, this Court has consistently recognized the authority of the legislature to provide for judicial action out of term. *Capital Outdoor Advertising v. City of Raleigh*, 337 N.C. 150, 156, 446 S.E.2d 289, 293 (1994); *State v. Humphrey*, 186 N.C. 533, 535, 120 S.E. 85, 87 (1923) ("[E]xcept by agreement of the parties *or by reason of some express provision of law*," judgments may not be entered out of term or out of county.) (emphasis added). There is

both statutory and common law authority for the trial court's entry of its supplemental judgment.

First, as noted and discussed in *Capital Outdoor,* N.C.G.S. §§ 7A-47.1 (1989) and 1A-1, Rule 6(c) (1990) both authorize the entry of judgment out of session. *Capital Outdoor,* 337 N.C. at 156-58, 446 S.E.2d at 293-95. Section 7A-47.1 provides, in relevant part,

> in all matters and proceedings not requiring a jury . . . any regular resident superior court judge of the district or set of districts and any special superior court judge residing in the district or set of districts . . . may hear and pass upon such matters and proceedings in vacation, out of session or during a session of court.

Defendant's motion for a supplemental judgment did not require a jury. Therefore, the trial court had authority under section 7A-47.1 to enter the judgment outside the 30 March 1992 session in which the case was heard.

The North Carolina Rules of Civil Procedure provide:

> The period of time provided for the doing of any act or the taking of any proceeding is not affected or limited by the continued existence or expiration of a session of court. The continued existence or expiration of a session of court in no way affects the power of a court to do any act or take any proceeding, but no issue of fact shall be submitted to a jury out of session.

N.C.G.S. § 1A-1, Rule 6(c) (1990). Under this rule, expiration of the 30 March 1992 session of Superior Court, Forsyth County, had no impact on the trial court's jurisdiction to enter a supplemental judgment on 11 May 1992.

This Court's decision in *Housing, Inc. v. Weaver,* 305 N.C. 428, 290 S.E.2d 642 (1982), offers further support for the action. We unanimously held in that case that "a trial court may alter or amend a judgment pursuant to Rule 59 . . . after the adjournment of the term during which the judgment was entered." *Id.* at 440, 240 S.E.2d at 649. Rule 59 requires that a motion for a new trial or to amend a judgment be made within ten days of the judgment, but does not prescribe the time for judicial action on the motion. The legislature could not have "intended that [this] specific period[] might be curtailed by the adjournment of the term of court at which judgment was rendered. To attribute any such intent to the legislature would vitiate the purpose of [Rule 59]." *Id.* The trial court entered its original judgment in this

case on 6 April 1992. Defendant moved to amend the judgment on 13 April 1992, within the ten-day window provided by Rule 59(e). Thus the trial court had authority, under *Housing, Inc.*, to enter its supplemental judgment based on that motion on 11 May 1992.

Finally, defendant contends the Court of Appeals erred by granting a partial new trial on the issue of whether General Motors unreasonably refused to comply with the Lemon Law. Having determined that plaintiffs are not entitled to a new trial, we need not address this issue.

Accordingly, we reverse the Court of Appeals' decision. The case is remanded to the Court of Appeals with instructions to remand it to the Superior Court, Forsyth County, for reinstatement of that court's judgment and its order and supplemental judgment.

REVERSED AND REMANDED.

Justice WEBB did not participate in the consideration or decision of this case.